## HOWARD v. KELLY, SHERIFF ET AL.

[71 South. 391.]

1. MARRIAGE.   *Ceremonial marriage.   Presumption of validity.   Burden of proof.   Common law marriage.   Meretricious relationship. Death.   Widows action for death.   Right to proceeds.*

Where a husband contracts a second ceremonial marriage that is one "solemnized according to the forms of law," every presumption will be indulged in favor of its validity and this presumption would overcome the presumption of the law that his first wife was still living although she had not been absent seven years at the time of the second marriage.

2. SAME.

Where a second marriage, duly solemnized, is shown the presumption arises that the first spouse has either been divorced or is dead, and the burden of proof is upon him who claims rights inconsistent with such presumption.

3. SAME.

Since prior to the adoption of the Code of 1892, common law marriages were recognized as lawful and binding as one contracted in pursuance of a license and the usual ceremony, every presumption should then be indulged in favor of the legality of a union thus shown in the same way and to the same extent as the law indulges in favor of a ceremonial marriage.

4. COMMON LAW MARRIAGES.   *Meretricious relationship.   Presumption.*

Where meretricious relationship is once shown to exist between a man and woman, it is presumed to have continued until this

cohabitation changed from an unlawful to a lawful relationship or in other words until the cohabitation became, in the eyes of the law, matrimonial.

5. COMMON LAW MARRIAGE. *Meretricious relationship.*

Where a man and woman were living in adultery previous to the Code of 1892, it may be shown that they contracted a common law marriage by proof that the unlawful manner of their cohabitation was changed, by the public announcement of the parties that they were man and wife and the assumption of all the burdens incident to matrimony, especially the burdens of maintaining a home and of bearing and caring for and rearing their children.

6. DEATH. *Widow's action for death. Right to proceeds.*

Where the widow of a railroad employee, killed in service, sued for his death under Code 1906, section 721, as his lawful widow, and asked for the usual instruction that she was entitled to recover such damages as the jury might determine "taking into consideration all the damages to the decedent, and all damages of every kind to any and all parties interested in this suit," she conceded the legitimacy of the children of decedent by his former marriage by seeking to enlarge her recovery on their account, and could not deny their right to an undivided interest in the proceeds of the suit on the ground that they were illegitimates.

APPEAL from the chancery court of Warren county.

HON. E. N. THOMAS, Chancellor.

Bill for interpleader by R. M. Kelly, sheriff, against Allen Howard and others. From the decree the named defendants appeal.

The facts are fully stated in the opinion of the court.

*W. C. Wells* and *Theo McKnight,* for appellant.

*Mayes, Wells, May & Sanders* and *Brunini, Hirsch & Griffith,* for appellee.

STEVENS, J., delivered the opinion of the court.

This is a second appearance of this case in the supreme court, the former appeal having been prosecuted from a decree sustaining a demurrer to the bill of inter-

pleader.   The case, as made by the pleadings, was fully
stated in the opinion as reported in 98 Miss. 562, 54 So.
10, Ann. Cas. 1913B, 229, reference to which is here
made for a statement of the material facts.  After the
cause was reversed and remanded the present contro-
versy arose over the distribution of the fund.   The
present appeal challenges the correctness of the decree
of the lower court finding that Henrietta, Robert, and
Samuel Howard are the legitimate children of Henry
Howard, deceased, for whose death through the negli-
gence of the railroad company recovery was had under
section 721 of the present Code.  The proof shows that
Henry Howard was first married to Sarah Riley at Port
Gibson in February, 1891; that he lived with his wife
only a few days, when he left her and went to Leland,
Miss.  A few days afterwards Sarah also left Port Gib-
son with the purpose of following her husband, but she
has never been seen nor heard of since.  In the fall of
the year 1891 Henry had a regular job as fireman of the
Yazoo & Mississippi Valley Railroad Company, was
making Leland his home or headquarters, and there and
then began what appears at first to be a meretricious
relationship with one Fannie Banks.   Shortly after-
wards, however, Henry Howard and Fannie Banks pro-
claimed themselves to be married, and in the spring of
1892 moved to Rolling Fork, where they openly lived
together as man and wife, and where they were re-
garded by the community as sustaining the relationship
of husband and wife.  From the early part of 1891 to
the year 1903 there is abundant evidence that they lived
together as man and wife; that Henry opened accounts
with merchants for the benefit of his family; that three
living children, whose interests are involved in this liti-
gation, were born to them; that one of their children
died and was buried at the expense of Henry; that
the services of physicians were engaged by Henry from
time to time for his reputed wife and children; and
that in all respects a home was maintained with Henry

as the head of the family and Fannie as the wife and mother until the latter's death in 1903. Some time after the death of Fannie Howard Henry began to live with Allena Howard, the plaintiff herein, and afterwards married Allena in due form. In November, 1908, Henry was killed in a railroad accident, and for his alleged wrongful death Allena Howard instituted the suit against the railroad company, which resulted in a judgment for seven thousand five hundred dollars, the proceeds of which was paid over to R. M. Kelly, sheriff of Warren county, who filed his bill of interpleader to have the chancery court to determine the conflicting claims to the fund. We are now called upon to determine whether the action of the chancellor in finding that there was a marriage between Henry Howard and Fannie Banks was warranted by the testimony. There is no proof of a ceremonial marriage between Henry and Fannie. Their children are compelled to rely upon a common-law marriage.

Counsel for appellant concede that, if the proof showed a ceremonial marriage, one "solemnized according to the forms of law" between Henry Howard and Fannie Banks that every presumption would be indulged in favor of its validity, and that this presumption would overcome the presumption of law that Sarah Riley the first wife, was still alive, although she had not been absent seven years at the time Henry first began cohabiting with Fannie Banks. If a ceremonial marriage had been shown between Henry and Fannie, then the question would be put at rest by many previous holdings of this court. *Spears* v. *Burton,* 31 Miss. 555; *Hull* v. *Rawls,* 27 Miss. 471; *Wilkie* v. *Collins,* 48 Miss. 496; *Railway Co.* v. *Beardsley,* 79 Miss. 417, 30 So. 660, 89 Am. St. Rep. 660; *Sullivan* v. *Grand Lodge,* 97 Miss. 218, 52 So. 360; *Bennett* v. *State,* 100 Miss. 684, 56 So. 780. The proposition is settled beyond doubt that, where a second marriage, duly solemnized, is shown, the presumption arises that the first spouse has been either

divorced or is dead, and that the burden of proof is upon him who claims rights inconsistent with such presumption. The question that now confronts the court is whether this presumption arises in favor of a common-law marriage or must it be confined to what might be termed statutory or ceremonial marriages contracted and solemnized according to the forms expressly prescribed by law. In connection with this question is the further inquiry, viz.: In the event the union claimed to be a common-law marriage was meretricious in its beginning, is the burden upon him who relies upon the common-law marriage to show affirmatively that the impediment to a lawful marriage has been removed, or in other words, can the presumption of innocence under such circumstances still arise in such way as to overcome and overthrow the presumption that the first spouse yet lives? This exact point has not been decided by our court.

In every expression of our own court in the cases mentioned the court refers to the second marriage as one solemnized according to the forms of law or solemnized in due form. It cannot be doubted, however, prior to the adoption of the Code of 1892, that a common-law marriage was recognized as lawful and binding as one contracted in pursuance of a license and the usual ceremony. We are persuaded that every presumption should then be indulged in favor of the legality of a union thus shown in the same way and to the same extent as the law indulges in favor of a ceremonial marriage. The contract of marriage is one and the essential thing; the ceremony giving utterance to and public evidence of the contract is an incident. In making this declaration we do not wish to be understood as discounting the wisdom or propriety of the usual ceremonies by which marriages are solemnized. We are not to be understood either as interpreting the meaning of our present statute requiring licenses to be issued. We simply assent to the holding repeatedly announced,

not only by our own court, but by the courts of other
jurisdictions, that the law favors marriage and indulges
the presumption that a marriage once shown is legal
until the contrary is established by competent testi-
mony. The law encourages marriage, and the courts
have repeatedly announced that the law will presume
in favor of marriage and legitimacy, and not concubin-
age and bastardy. This presumption of innocence is
a strong presumption, and throws the protecting arms
of the law around innocent children, the issue of a mar-
riage clearly established, and casts a burden upon him
who would take away the good name of a child or defeat
its property rights on the ground and charge of illegiti-
macy. In the instant case the proof abundantly shows
the common-law marriage between Henry Howard and
Fannie Banks. The fact of this relationship so clearly
exists that the reputable white citizens of Rolling Fork,
including the family physician who had known Henry
from his boyhood days, never had occasion to question
the legality of the union. It appears that the burdens
and responsibility which marriage casts upon the head
of the family were patiently and continuously borne by
Henry until the death of his wife, Fannie, in 1903. It
will be remembered that no witness undertook to say
that Sarah Riley was alive either at the time Henry and
Fannie lived together as husband and wife in Rolling
Fork or at the time of the institution of the present
litigation, and Sarah, the first wife, has not been heard
of now these twenty-odd years. This fact, we think,
strengthens the presumption in favor of the legality of
the second marriage.

But it is contended that this second union or common-
law marriage should not be upheld because the cohabi-
tation of Henry and Fannie was meretricious in its in-
ception. It may be conceded that this meretricious rela-
tionship is presumed to have continued until this co-
habitation changed from an unlawful to a lawful rela-
tionship, or, in other words, until the cohabitation be-

came, in the eye of the law, matrimonial.  The proof, however, is overwhelming that at some period of time either before or just after the parties moved to Rolling Fork the relationship was open and to all intents and purposes lawful.  We do not think the court is called upon to determine just the day or the month when it could safely be said the marriage existed.  The common law of the states generally assumes that a contract *"per verba de præsenti or per verba de futuro cum copula"* constitutes a complete marriage.  A common-law marriage is generally held to be good unless the statute expressly renders it void.  We think the proof justifies the conclusion that Henry and Fannie passed as husband and wife before the Code of 1892 became effective. In Scotland a common-law marriage is generally determined by "habit and repute."  If this be the test, then the issue of the union between Henry and Fannie must be protected.  It is said by the Illinois court, in the case of *Potter* v. *Clapp,* 203 Ill. 592, 68 N. E. 81, 96 Am. St. Rep. 322, that the unlawful character of the cohabitation may be shown by the proof to have changed and to have become "matrimonial in its intent and character, which intent and character may be shown by direct or circumstantial proof.  This question was dealt with also in the case of *Adger* v. *Ackerman,* 115 Fed. 124, 52 C. C. A. 568.  The court, through SANBORN, J., says:

"The true rule and the great weight of authority is that, inasmuch as the law itself and all its presumptions deprecate illegal, and favor lawful relationships, slight circumstances may be sufficient to establish a change from an illicit to a legal relation, and that proof of its time or place is not indispensable."

The supreme court of Georgia, in the case of *Drawdy* v. *Hesters,* 130 Ga. 161, 60 S. E. 451, 15 L. R. A. (N. S.) 190, announces that:

"The presumption that cohabitation shown to have been illicit in its inception so continued may be overcome by direct or circumstantial evidence that during

the cohabitation the parties agreed to become husband and wife.''

The same result is announced in the note to *Chamberland* v. *Chamberland,* 6 Ann. Cas. 486, where the rule is stated as follows:

''It has been held that, although cohabitation between a man and woman is meretricious in the beginning, a valid marriage may. be shown by proof that the parties sustained the relation of husband and wife after the impediment to their marriage was removed, and that it is not absolutely essential to prove a ceremonial marriage.''

We conclude, therefore, that the unlawful character of the cohabitation is shown by the proof to have changed by the public announcement of the parties that they were man and wife and the assumption of all the burdens incident to matrimony, especially the burdens of maintaining a home and of bearing, caring for, and rearing the very children whose interests were put in jeopardy by the contention of the widow Allena Howard in the present litigation.

There is another question, the answer to which must lead to an affirmance of this case. The action against the railroad company for the death of Henry Howard was instituted by Allena as his lawful widow under section 721, Code of 1906. In the former opinion of the court in this case. this court expressly held that:

The suit in question ''fixes the interest of all parties, and nothing that the court can do can eliminate their interest. So far as the widow and children are concerned, they derive their title from the same source.''

The court further said:

''If Henrietta, Robert, and Sam Howard are children of Henry Howard, deceased, as they claim to be, they were by law plaintiffs in the suit of Allena Howard against the Yazoo & Mississippi Valley Railroad Company just as though their names appeared in the declaration.''

It appears that on the trial of the damage suit the widow, as plaintiff, asked for the usual instruction that the plaintiff was entitled to recover such damages as the jury might determine, "taking into consideration all the damages to the decedent and all damages of every kind to any and all parties interested in this suit." In other words, the widow, in prosecuting the damage suit, conceded the legitimacy of the children and sought to enlarge the recovery on that account. Testimony of the existence and ages of these children was given upon the trial, and the fact that the decedent left children is bound to have influenced the jury in their award. The plaintiff was expressly authorized to prosecute the suit in her own name for the benefit of all parties in interest. We think she has in her damage suit treated the children as coplaintiffs, and, this being so, the children, as coplaintiffs, should in equity be regarded as having title to an undivided interest in the proceeds. Their right to the fund is based upon their judgment against the railroad company, and not the judgment alone recovered by Allena Howard. It was competent for the railroad company in that suit to challenge their interest or their right to recover anything. This the railroad company did not undertake to do. If the widow therefore in that action conceded the interests of the minors, and the railroad did not contest the legitimacy of the children, and the judgment was, in fact, enlarged on account of the decedent leaving children, then certainly the widow should not now be allowed to reverse positions and claim all the fruits of the previous litigation. Let us suppose that the widow, in filing her declaration, has expressly joined the names of the minors as coplaintiffs by her as next friend, and the recovery was had on the face of the record for all parties plaintiff, could she then be heard to claim the whole judgment? We think not. By the proof and the presentation of the case to the jury the result is the same as if the

names of these minors had been written on the face of the declaration as coplaintiffs.

The decree of the chancellor, in our judgment, is eminently correct, and should be, and is hereby, affirmed.

*Affirmed.*