## YOUNG *v.* ASHLEY ET UX.

[86 South. 458.   No. 21332.]

1. HOMESTEAD.   *Wife a proper party to a suit to protect homestead rights as against claims founded on instrument signed by husband alone.*

   The wife has a right in the homestead of her husband which equity will protect; and she is a proper party to a suit to protect the homestead rights against invasion or intrusion by those claiming right under an instrument signed by the husband alone.

2. EQUITY.   *Maxim that he who seeks equity must do equity not applicable to homestead rights.*

   The doctrine that "he who seeks equity must do equity" has no application to a suit by a husband and wife to enjoin the cutting of timber by one claiming the right to do so under a contract signed by the husband alone.   The maxim will not be applied so as to destroy homestead rights created by statute in such cases.

APPEAL from chancery court of Copiah county.

HON. L. F. EASTERLING, Chancellor.

Suit for injunction by L. M. Ashley and wife against R. J. Young.   From the decree rendered, defendant appeals. Affirmed.

*Wilson & Henley,* for appellant.

The contention of appellant is that the court below erred in granting appellees the relief sought without requiring them to do equity by restoring at least that part of the purchase money due after the value of the timber cut, as established by the evidence, had been deducted.

The case of *Rounds* v. *Clark,* 70 Miss. 263, is conclusive on this question.   In that case a demurrer is filed to a bill of complaint on the ground that the complainants did not offer to do equity by restoring the purchase money. This demurrer was sustained, the bill dismissed and com-

plainants appealed. The court held: "If the husband elects to invoke the aid of a court of equity rather than resort to a law court, the shadow of the wife's name as an unnecessary party to the proceeding will not absolve him from the operation of the rule which requires him to do equity before asking relief in equity. Though the conveyance is invalid, the appellant must be required to do equity by paying what the conveyance designated to secure before he can have a court of conscience cancel the invalid instrument.

This doctrine was also adhered to in the case of *Duncan* v. *Moore,* 67 Miss. 136, and *Dean* v. *Robertson,* 64 Miss. 195. In fact, it is a well-established rule of law in this state that before a court of conscience will declare an invalid contract void, and cancel the same, it will require the party seeking to avoid his contract to do equity by making the other party whole. *American Freehold Land Co.* v. *Jefferson,* 69 Miss. 77; *Watts* v. *Bonner,* 66 Miss. 629; *Hawson* v. *Fields,* 41 Miss. 520; *Shipp* v. *Wheeler,* 83 Miss. 646; *White* v. *Trotter,* 26 Miss. 88; *Manlin* v. *Brodus,* Freeman, 35.

If Mrs. Ashley did not approve of this contract she should have objected when she first learned of it, and Mr. Ashley should have restored the eight hundred dollars paid him by Young instead of retaining it for nine years and accepting several payments for extensions of the time which Young would have to remove the timber. Therefore, in equity as well as in law, L. M. Ashley must account for the interest, as well as the original amounts paid him.

Where one improperly retains the property of another he is presumed to have kept it for a purpose of profit to himself, and will be charged with interest." 22 Cyc. 1506; Note 78; citing *Simpson* v. *Feltz,* 16 Am. Dec. 602; *Marvin* v. *McRae,* Cheves, (S. C.) 61.

It would certainly be inequitable and unfair for appellee, M. L. Ashley, to retain the purchase money paid by Young in good faith, in view of the fact that Ashley has waited so long before objection to the contract. As long as tim-

ber was cheap it was Ashley's purpose to hold Young to his contract and no objection was made. In fact, both Mr. and Mrs. Ashley were evidently pleased with their bargain, or they would have refused to grant extensions. Therefore, Ashley must account for the nine years' use of this money, as well as the money itself. *Powell* v. *Plant,* 23 So. 399, see page 405; *Torplay* v. *Wilson,* 33 Miss. 467. Especially is this true if Young is required to account for the mesne profits, that is the amount of timber cut. *White* v. *Tucker,* 52 Miss. 145; *Brooks* v. *Block,* 68 Miss. 162. It was the duty of the court to order an accounting between the parties to this contract, or else render its decree in such a way as to make clear what it held in regard to the restoration of the purchase money, the court did neither.

*Wells, Stevens & Jones,* for appellees.

The deed to the standing timber on a homestead is not only voidable but absolutely void. *MacKenzie* v. *Shows,* 70 Miss. 388, 12 So. 336; 35 Amer. State Reps. 654; *Blair* v. *Frank B. Russell & Co.,* 120 Miss. 108. In the first named case our court, by Judge Woods said: "Collins, the purchaser of the timber, acquired nothing by the invalid conveyance from the husband alone." In the last named case this court, by Judge Ethridge, said: "It clearly appeared that a large number of trees cut were situated upon the homestead, and as the wife admittedly had not signed the deed, it was void as to the homestead, etc."

In fact, counsel for appellant admit the invalidity of the deed and make here the sole contention that, because this originated in the chancery court, no relief could be given the cause of appellant on this point is bottomed upon a decision that has been expressly overruled. The case of *Pounds* v. *Clark,* 70 Miss. 263, which counsel say is conclusive on this question was expressly overruled by MacDonald case; this court, speaking through Chief Justice Whitfield, said: "The case of *Pounds* v. *Clark,* 70 Miss. 263, 14 So. 22, announces a wholly unsound proposition and it is hereby overruled."

Whatever name may be given to the wife's interest in the homestead, whether it be called an estate or an interest or a claim, or a veto power merely, it is such an interest or right as the statute requires to be conveyed by deed and a deed to the homestead without the wife joining in the conveyance has been correctly held in the case of *G. & S..I. R. R. Co*. v. *Singleterry*, 78 Miss. 72, 29 So. 754, to be an absolute nullity. And it was further held in that case that the husband himself was not concluded as to his own interests even from bringing the action of trespass to recover damages from the railroad company for laying its right of way on the land to which the husband had executed a conveyance without the joinder of the wife; the land being homestead property. And further, the plain purpose of our statute on this subject was to protect the wife in the shelter and refuge of a home and unless she herself joined in conveying away the homestead. (See the opinion in full, settling the whole law of this case.)

But aside from any controversy that appellees should have offered to do equity in any bill to cancel the invalid deed, we respectfully submit that the main purpose of the bill in this case was to enjoin appellant from cutting the trees that remained on the homestead. There was a temporary injunction to restrain the purchaser under his invalid deed from entering upon the lands and taking any more of the trees. Mr. Young had secured about four extensions of time within which to cut and remove the timber, and it is intimated in the record that Mrs. Ashley became tired and exhausted with this continual claim to the timber hanging over the homestead, and the bill was not filed in this case until Mr. Young by his own testimony, had cut timber in value worth a great deal more than he paid as a consideration for the invalid deed. In other words, by his own testimony, he cut two hundred and seven thousand feet for which he paid eight hundred dollars as the original consideration, and ninety-two dollars for extensions. On a basis of anywhere from four to six dollars a thousand stumpage, the court will observe that he has realized an

amount in excess of the original consideration. By all the testimony in the record he has received timber more valuable than the consideration paid. He is only smarting under the disappointment of not realizing a greater profit out of the invalid transaction. But regardless of the amount realized this is a bill filed jointly by husband and wife to protect the seventy-five thousand feet of standing timber. The main purpose of the bill is to obtain injunctive relief. Certainly if husband and wife can maintain an ejectment in a court of law or a suit against the railroad company for damages for laying the track in pursuance of an invalid deed to the right of way, then they can maintain an injunction to stop an alleged purchaser of the timber from going upon the homestead with his team and logging outfit and selling and taking away the trees to which the purchaser has no title whatever. This is the sole proposition before the court.

Our court in *MacKenzic case,* 70 Miss., said: "We are not inclined to eat away a wise and most beneficent statute designed for the welfare and support and comfort of wives and children by engrafting any exceptions upon it."

We take our stand with the court on the side of helpless widows and innocent children, playing and prattling about the old homestead. The statute announces a rule of conduct and is expressive of the public policy of the state. Will the court say that the wife cannot go into equity even to cancel a deed which the husband has made without her signature or consent? If so cruel or profligate a husband with the aid of the court can nullify the statute, we are not concerned with any right which the husband might have in his separate bill asking for relief. We are also not concerned with a bill to cancel a deed of trust to secure an admittedly honest debt. Those cases will be dealt with when they arise. We are vitally concerned with the one and single question whether the wife can here protect the standing trees which have not yet been cut, felled and delivered.

The court will observe that the final decree in this case does not attempt to adjust the equities between the parties.

In fact, there was no cross-bill, by the defendant seeking any recovery of any portion of the consideration paid. There was no occasion to go into any accounting on any alleged debt issue. The court simply left the parties where the circumstances placed and found them. The decree appealed from simply perpetuates the temporary injunction restraining any further cutting of timber, and to do so necessarily adjudged that the deed was void. But the decree expressly says: No damages to be recovered from either party.

The law has been vindicated and equity done, and the decree appealed from should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

On the 9th day of August, 1910, L. M. Ashley owned certain lands containing one hundred and fifty-four acres, upon which he and his wife resided, it being a homestead upon which they then lived and have continued to live since. On that day L. M. Ashley undertook to sell to R. J. Young the timber upon a part of this homestead. The contract signed recited a consideration of eight hundred dollars, four hundred dollars cash and four hundred dollars to be paid on the 5th day of December, 1910, and purported to sell all pine timber on the east of lands now in cultivation, setting out a description of the lands, and providing that Young is not to cut any of the timber until the note had been paid, and that he was to have five years in which to remove the said timber. Subsequently for a consideration L. M. Ashley extended the time on two different occasions. Young entered upon the land and cut timber therefrom. The proof showed the value of the timber cut to approximate one thousand dollars, when he was notified not to cut the timber further, and, refusing to abandon his operations, this injunction was sued out by L. M. Ashley and his wife, praying for an injunction to prevent the further cutting of timber and for a cancellation of the contract for the reason that the wife had not signed

the same. An injunction was issued, and an answer filed, admitting the execution of the said agreement, and not admitting nor denying that the land is a homestead of the complainants, but admitted that he cut and removed some timber and denied owing them anything for the timber so cut, and claiming damages for the injunction which prevented his cutting and removing the timber, and forcing them to defend the suit; and alleging, further, that he acted in good faith in buying the timber, and paid the full price asked by Ashley, and that complainants accepted and received the benefit of the money so paid. It further alleged that Mrs. A. C. Ashley, the wife, had no vested interest in the property in controversy, and charges that her being joined is a misjoinder, and that her name should be stricken from the bill.

It is further alleged in the answer that the timber was cut and removed without objection, and that no legal claim against the timber existed in complainants, and charged that the complainants should be required to do equity by returning to him the *pro rata* of the purchase price for timber uncut and remaining on the land. A motion was also filed to strike the name of Mrs. Ashley from the bill as being an improper party. The chancellor made the injunction perpetual, but set off the purchase price against the timber cut, and allowed neither party any money judgment. From which judgment this appeal is prosecuted.

It is abundantly established in the evidence that the property constituted the homestead, and that the title to the land was in the husband, L. M. Ashley, and that the wife did not sign the conveyance or contract, and that the complainants occupied the land at the time of the contract and since as a homestead.

Two questions are presented for consideration: One is whether the wife has such a right in a homestead that she may resort to the courts for protection and relief where the husband has undertaken to dispose of the homestead without her joining in the deed and consenting thereto; and, second, whether a court of equity on being applied to

will grant relief to the husband and wife where the money is not repaid or tendered or offered to be repaid.

The appellant cites *Pounds* v. *Clarke*, 70 Miss. 263, 14 So. 22, and *Duncan* v. *Moore*, 67 Miss. 136, 7 So. 221; *Deans* v. *Robertson*, 64 Miss. 195, 1 So. 159, and other authorities antedating the 70 Miss. 263, 14 So. 22, on the proposition that equity will not lend its aid in relieving a party from a contract or obligation unless and until he pays or offers to pay whatever is equitable under the particular facts under the doctrine of the maxim that "he who seeks equity must do equity." In *Pounds* v. *Clarke* the court held that, although the wife must join in a conveyance of her husband's homestead, she has no estate therein, and is not a proper party to a bill by him to cancel a trust deed thereon given by him alone, and that he cannot, by joining her as a complainant, avoid the requirement of a chancery court of doing equity by offering to pay the secured debt. This case, however, is expressly overruled in *McDonald* v. *Sandford*, 88 Miss. 633, 41 So. 369, 117 Am. St. Rep. 758, 9 Ann. Cas. 1, which fact no doubt escaped the memory of learned counsel for the appellant. In this case the appellant and his wife filed a bill to cancel a decree of a court which had been obtained against the husband declaring a note to be a mortgage and foreclosing the same. This note contained a clause as follows:

"And to make the above note good, or in case I fail to pay the above specified amount, they are to have the following described lands."

The decree of the court had appointed a commissioner to sell the land for the satisfaction of the debt, the note being signed by the husband alone. The bill filed charged that this land was a homestead at the time the note was given, and at the time the decree was rendered, that the wife knew nothing of the execution of the note by her husband, and nothing of the suit declaring it a mortgage on the homestead, and that her husband was deterred by duress from appearing and defending the former suit. The court below sustained a demurrer to the bill, and on appeal

this court reversed the judgment of the court below and overruled *Pounds* v. *Clarke.*

There are numerous authorities in other states to sustain the wife's right to file a suit to protect her right in the homestead, and the case above cited declares her right in this state to resort to the courts to protect her interest. The decision overruling the *Pounds Case* in 70 Miss. 263, 14 So. 22, is in general terms, but we think the decision necessarily overrules it on both points. The homestead is given not so much for the benefit of the husband as it is for the wife and children. It is designed to protect helpless women and children from the improvident acts of an improvident husband. It is founded in a wise public policy, the state deeming it better that wives and children should have shelter and a place to live than that a creditor should have his debt, unless he secures his debt by procuring the wife's signature to the contract. The wife has a right to live upon the homestead during the time it is occupied as such without having its value destroyed or depreciated, and to the quiet and peaceable enjoyment against all aggression from any creditor or other person where she has not conveyed it away. After the husband's death she has the right to live upon it during her widowhood, and it cannot be sold without her consent. All contracts seeking to acquire rights in the homestead are void as contracts when not signed by the wife. The paper containing the writing is nothing. It is mere waste paper, and no rights against the homestead can be founded upon such paper.

It would not be seriously argued, we think, that in case the husband should sign a deed in which his wife did not join that the grantee could go upon the homestead, commit trespass, or tear away the buildings, and the wife and husband be remediless unless they could procure enough money to repay what the husband had received for his void deed.

We think the principle has been fully settled that the maxim that "he who seeks equity must do equity" does not apply to a suit to protect the homestead where there is

no valid contract. The fact that the husband may have received money for this worthless paper does not prevent him from protecting the homestead. This proposition is expressly settled in *Wood's* v. *Campbell,* 87 Miss. 782, 40 So. 874. In that case Judge WHITFIELD, speaking for the court, says:

"The doctrine that 'he who seeks equity must do equity' has no application to the case made by the record. The homestead was exempt, and descended exempt to the heirs of Dozier. It would be a mockery of the exemption law, and a perversion of the equitable maxim referred to, to hold that the heirs were bound to tender, with their bill, the debt of their father, although the homestead which descended to them was absolutely exempt from any debt of the father."

It would be a vain and useless thing to require the wife's signature to a conveyance of the homestead if the husband can by his sole contract preclude himself and his wife from resorting to equity to protect it. Against many persons injunction will be the only effectual relief for the protection of the homestead. The maxim that "he who seeks equity must do equity" was not designed to overturn the beneficent public policy of the homestead law or to overturn the settled policy of legislative enactments in the furtherance of public welfare.

*Affirmed.*