Oatis *et al. v.* Mingo.

(In Banc.  May 27, 1946.)

[26 So. (2d) 453.  No. 36139.]

Rawls & Hathorn, of Columbia, appellants.

R. H. Dale, of Columbia, for appellee.

898

**Alexander, J.,** delivered the opinion of the Court.

Appellants filed their bill to cancel deed from Bertha Jett to Jodie McClendon, and a subsequent deed from Mc-

Clendon to appellee and to confirm title in appellants to the land involved which is described as:

"Begin at the center of SE¼ of Section 32, Township 4 North Range 18 West and run thence South 10 chains, 25 links, thence West 174 feet, thence North 125 feet to point of beginning of land hereby conveyed thence North 50 feet, thence West 50 feet, thence South 50 feet, thence East 50 feet to place of beginning, . . . "

The basis for complainants' contention is that the deed from Bertha Jett is void under Section 332, Code of 1942, for the reason that it conveyed part of a homestead, and the deed was not executed also by the husband. Appellee's answer raises the factual legal issue whether grantor was legally the wife of Foster Jett, her purported spouse.

The relevant facts are as follows: Foster and Bertha Jett were legally married about fifty years ago. They were divorced in 1907. Prior to the divorce, Foster Jett had been committed to the State Hospital for the insane, where he remained for about seven years, and whence he was then discharged. They had four children, two of whom are the appellants.

In 1925, Bertha married one Rhodes. They separated a few years later. The record discloses no divorce. Bertha purchased the homestead in 1926. In 1930, her former husband Foster Jett requested that she return to him in Prentiss. She acceded to this request and went to live with him, later moving all his goods, stock and household equipment to the homestead of Bertha. Shortly after this reunion, Rhodes, the second husband, died, so that without invoking any presumption of a divorce between Rhodes and Bertha, arising out of the fact of a later marriage between Rhodes and another woman, the death of Rhodes freed Bertha of any obstacle which may have existed to the establishment of a matrimonial common-law status. See Howard v. Kelly, 111 Miss. 285, 286, 71 So. 391, Ann. Cas. 1918E, 1230.

Bertha and Foster Jett have lived there together ever

since.  In 1940, Bertha executed the deed to McClendon, who in turn conveyed the same lands to appellee.  In 1944, Bertha and Foster Jett conveyed the identical property, a part of the homestead, to appellants.  The chancellor denied relief to complainants and dismissed their bill.  Complainants' appeal requires review of the sufficiency of the evidence to establish the common-law marriage between Bertha and Foster Jett.

If a common-law marriage was established, its incidents, including the application of Section 332, would be those evoked by a ceremonial marriage.  35 Am. Jur., Marriage, Sec. 237, p. 339.

On the issue of fact as to the status of their cohabitation as matrimonial, the following testimony is relevant: Their former marriage relationship from which union four children were born, two of whom are still living; the merger of their respective personal properties into a common household support; the attitude of Bertha toward her former status as his wife as being morally and scripturally indissoluble; their actual cohabitation as husband and wife for over fifteen years; and the common repute in the community that they asserted and bore such relationship to each other.  For several years prior to the institution of this suit, Foster had been an invalid and Bertha had taken continuous, complete and conscientious care of him.  Further details will not be here set out.

Appellee would contradict these convincing circumstances by quoting Bertha as having told her that she and Foster were not legally married, and that she "could get married."  This statement is in substance corroborated by McClendon and another witness, the latter, as well as appellee divulging that Bertha asserted that she was staying with Foster because he was the father of her children.  The former witness nevertheless conceded that he had always thought them to be married.

We do not find in the testimony any facts inconsistent

with the circumstances supporting a finding that the two Jetts had resumed their relationship with matrimonial intent. Nor is our conclusion at variance with any finding of fact by the learned chancellor, who expressed no opinion thereon but simply dismissed the bill. If we should hold appellees to their assertion, unsupported by the record, that the basis of the chancellor's decree was the failure of complainants "to do equity," we would be compelled to advert to the fact that the suit is not by Bertha Jett, who received the consideration for the assailed deeds to McClendon, and to the absence of any legal obligation upon Foster Jett, for whose protection Section 332 was enacted, to pay for the privilege of invoking its provisions. See Woods v. Campbell, 87 Miss. 782, 40 So. 874; Young v. Ashley, 123 Miss. 693, 86 So. 458. Likewise, the decree would be divested of any factual findings whose justification is made an issue by this appeal.

We find no support for the contention that Section 2746, Code 1942, conclusively forbade the contracting of a valid subsequent common-law marriage. The section makes criminal the cohabitation of divorced persons and punishes it as for adultery. Yet, the punishment of unlawful cohabitation eo nomine (Section 1998, Code 1942) has been no obstacle to a bona fide attempt to invest such relationship with the attributes of a recognized matrimonial alliance. Sims v. Sims, 122 Miss. 745, 85 So. 73; 35 Am. Jur., Marriage Sec. 203, p. 312. See also Walker v. Matthews, 191 Miss. 489, 3 So. (2d) 820. The cited statute does not of course forbid a subsequent ceremonial marriage which carries incidents not at all distinct from common-law marriage. Howard v. Kelly, 111 Miss. 285, 71 So. 391, Ann. Cas. 1918E, 1230.

We are compelled to recognize the status of common-law marriage between Foster and Bertha Jett upon the date of the conveyance of part of the homestead by the wife alone to McClendon. This deed was therefore in-

valid and conveyed no title. The subsequent conveyance by both parents to appellants is therefore without vitiating incident and must be upheld.

Reversed and decree here for appellants.