Thompson, et al. *v.* Dyess.

Nov. 16, 1953

No. 38956          43 Adv. S. 31          67 So. 2d 721

*Cephus Anderson,* Hattiesburg, for appellant.

*J. M. Travis*, Paulding, for appellee.

LOTTERHOS, J.

This case involves an attack upon a timber deed alleged to include the grantor's homestead, without the signature of his wife. There was a decree for the defendant, from which appeal is taken.

The essential facts as shown in the record, in view of the findings of the court below, are as follows: For many years, Edd Vaughn owned, and with his wife, Moriah Vaughn, occupied 380 acres of land in Sections 21 and 22, Township 2 North, Range 13 East, in Jasper County. No selection of homestead was ever made by Edd Vaughn. On November 14, 1946, Vaughn executed a timber deed to appellee, Dyess, and Lee Donald, granting them the right to remove the timber from his land within four years. His wife, Moriah Vaughn, did not sign the deed. Appellee, Dyess, cut and removed part of the tim-

ber. Edd Vaughn died intestate on July 7, 1947. His only heirs were his widow, Moriah Vaughn, and their daughter, Phelia Thompson, appellant. After his death, Phelia Thompson moved into the home of her mother, and lived there with her. Thereafter, Dyess cut and removed some more timber from the land. Moriah Vaughn died intestate on March 6, 1949. At this time, neither appellant nor either of her parents had objected to the cutting of the timber. In the fall of 1950, appellee returned to cut the remaining timber, prior to expiration of his claimed rights on November 14, 1950. Appellant then objected to his cutting the timber on a certain 160 acres of the land in Section 22, and obtained a temporary injunction.

The timber deed of November 14, 1946, was on a cash consideration of $1,400. Edd Vaughn deposited this money in a joint savings account in a bank in the name of "Edd Vaughn or Moriah Vaughn." On June 17, 1948, after the death of Edd Vaughn, his widow withdrew $50 from the account. Then on July 8, 1948, she withdrew the remaining $1,350 from the joint savings account and deposited this sum to the credit of Phelia Thompson, appellant, in a checking account. Since that time, appellant has withdrawn this money from the bank account.

This litigation originated in a bill of complaint filed by appellant and her son, Early Trotter, describing 160 acres of the land, alleging wrongful cutting of timber therefrom by appellee, and praying for an injunction against him, and also damages. The deed of November 14, 1946, was not mentioned. It is here noted that Early Trotter appears to have no legal interest in this suit. Appellee, Dyess, answered, relying on said deed as the source of his right to cut the timber from the entire tract of 380 acres. Appellants then filed another pleading in which they averred that said deed was void as to the 160 acres of land described in the bill of complaint, because, it was

charged, this land was homestead, and the wife of Edd Vaughn did not sign the deed.

In the final decree, the chancellor dissolved the temporary injunction and dismissed the bill. His decision, as shown by his written opinion, was based on two points: (1) That appellant, Phelia Thompson, did not come into court with clean hands, because she had received $1,350 of the money paid for the timber and made no offer to pay it back; and (2) that she failed to prove that the 160 acres described in the bill was the homestead, rather than some other part of the entire 380 acres.

■■■ There can be no doubt that the timber deed of November 14, 1946, insofar as it might affect the homestead of Edd Vaughn, was void. Sec. 330, Code of 1942. ■■■ The question is whether appellant, Phelia Thompson, was in a position to claim the benefit of that invalidity in a court of equity. The chancellor held that she was not, applying the "clean hands" maxim. We think that perhaps the more nearly applicable doctrine is found in the maxim that "he who seeks equity must do equity." Upon a consideration of this rule, according to its words and its generally understood meaning, we were at first inclined to feel that Phelia Thompson should not be permitted to attack the deed, after enjoying the fruits thereof, without first offering to make restitution. However, the authorities lead to a contrary conclusion, based on the special safeguards which protect homestead rights. For example, in Young v. Ashley, 123 Miss. 693, 86 So. 458, the Court affirmed the granting of an injunction to Ashley and his wife against Young, who was cutting timber from the homestead under a deed executed by Ashley only. On the question whether "a court of equity on being applied to will grant relief to the husband and wife where the money is not repaid or tendered or offered to be repaid," it was said:

"We think the principle has been fully settled that the maxim that 'he who seeks equity must do equity' does

not apply to a suit to protect the homestead where there is no valid contract. The fact that the husband may have received money for this worthless paper does not prevent him from protecting the homestead. . . . It would be a vain and useless thing to require the wife's signature to a conveyance of the homestead if the husband can by his sole contract preclude himself and his wife from resorting to equity to protect it. Against many persons injunction will be the only effectual relief for the protection of the homestead. The maxim that 'he who seeks equity must do equity' was not designed to overturn the beneficient public policy of the homestead law or to overturn the settled policy of legislative enactments in the furtherance of public welfare.''

To the same effect, see Woods v. Campbell, 87 Miss. 782, 40 So. 874; and McDonald v. Sanford, 88 Miss. 633, 41 So. 369, overruling Pounds v. Clarke, 70 Miss. 263, 14 So. 22. See Young v. Ashley, supra, for a discussion of the effect of McDonald v. Sanford. It is true that the cases cited involved persons who had not received the direct benefit of the money paid on account of the execution of the invalid instruments. However, we conclude that the underlying principle of these cases applies here, insofar as the effectiveness of the timber deed, as a conveyance, is concerned. Hence, Phelia Thompson is not cut off from asserting the invalidity of the deed, as applied to the homestead, nor from seeking and obtaining an injunction.

The rule under discussion harmonizes with the doctrine that ■■ a husband who attempts to convey part of the homestead without his wife's signature is not estopped by his warranty to assert the invalidity of the deed, even after his wife's death. Bolen v. Lilly, 85 Miss. 344, 37 So. 811.

■■ Although the defense made by appellee avails him nothing as against the prayer for an injunction to prevent further cutting of timber on the homestead, yet we are

of the opinion that appellant is in no position to claim damages for the timber previously cut. Under the finding of the chancellor, that timber was cut and removed without objection either by Moriah Vaughn in her lifetime or by appellant, her daughter. Furthermore, appellant received almost the entire consideration paid for the timber, and made no offer to make restitution thereof.

This brings us to the other proposition upon which the court below placed his decision. ▇▇▇ The record supports the finding that the evidence was insufficient to show specifically which 160 acres out of the entire 380 acres constituted the homestead. But this failure of proof did not entitle appellee to a decree of dismissal. In fact, since Edd Vaughn had not made a selection of homestead in accordance with the statutory provisions, it would have been improper for the court to have undertaken to designate the specific 160 acres constituting the homestead. The correct course is defined in Bruce Co. v. Spears, 181 Miss. 786, 181 So. 333, a case almost identical with the present case on this point. In that case, the trial court allotted homestead as prayed by Spears and his wife, and invalidated the timber deed, not signed by the wife, as to the 160 acres so designated, out of the entire tract of 424 acres. This Court reversed the case, and held that commissioners should have been appointed under the statute (now Secs. 322 and 323, Code of 1942) to make the allotment. After reviewing the authorities and stating the reasons, the Court said: "It follows that the court below erred in undertaking to adjust the rights of these parties without first having the homestead allotment made as directed by statute, and he should not have made the allotment himself." For the subsequent history of this case, see Bruce Co. v. Spears, 187 Miss. 405, 187 So. 756.

We conclude that the case at bar should be reversed in order that the Vaughn homestead may be designated in the statutory manner; and that, when the description of

the homestead has been made certain, appellee should be enjoined from further cutting of timber thereon.

Reversed and remanded.

*McGehee, C. J.,* and *Lee, Arrington,* and *Ethridge, JJ.,* concur.