BOUNDS, et ux. *v.* THE OHIO OIL COMPANY

No. 40890            November 3, 1958            106 So. 2d 67

*Alfred Moore,* Hattiesburg, for appellants.

280

*Simrall, Aultman & Pope,* Hattiesburg; *C. F. Currier, O. L. Hasty, Riley B. Fell,* Shreveport, Louisiana, for appellee.

Lee, J.

The Ohio Oil Company, a corporation, claiming to be the owner of an oil, gas and mineral lease on certain lands, as described, filed its bill of interpleader for the purpose of determining the proper parties in interest to whom it should pay royalties on account of a producing gas well on said lands. Mrs. Roberta Roberts and others were made defendants. H. C. Bounds and wife, Mrs. Wauline R. Bounds, intervened and filed an answer, denying that the complainant and the named defendants owned any interest whatever in said lands. They made their answer a cross bill and claimed that they owned all of the gas, oil and mineral rights thereunder. A demurrer to the cross bill was sustained and the cross-complainants amended the same and set up substantially the following allegations:

For sometime prior to July 19, 1951, Mrs. Eddie Carnes Sullivan was the owner of both the surface and the minerals in and to the lands in question. She had been married to Kin Sullivan in 1936, and she and her husband lived on the land as their homestead. On July 19, 1951, she executed and delivered to J. N. Roberts a gas, oil and mineral lease of said land, which, in due course, was assigned to Ohio Oil Company, and which is the instrument under which the complainant asserted its rights. Provision 8 thereof was as follows:

· ''The rights of either party hereunder may be assigned in whole or in part, and the provisions hereof shall extend to their heirs, successors and assigns; but no

change or division in ownership of the land, rentals or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee; and no change or division in such ownership shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U. S. mail at Lessee's principal place of business with a certified copy of recorded instrument or instruments evidencing same.''

Mrs. Sullivan's husband did not join in the lease, and subsequently, on April 6, 1953, she was divorced from her husband by a decree of the Chancery Court of Forrest County, Mississippi. Thereafter, on April 18, 1953, she granted, bargained, sold, conveyed and warranted, ''subject to the conditions hereinafter recited'' the land in question to H. C. Bounds and wife, Mrs. Wauline R. Bounds. The language immediately following the description was: ''Insofar as the oil, gas and other minerals are concerned, the Grantor does hereby, for the same consideration above recited, convey and quitclaim unto the grantees herein all of her right, title and interest in and to said oil, gas and other minerals in, on and under said lands, if any; but Grantor does not make any warranty whatsoever in any wise thereunto pertaining.

''This instrument is executed *subject to* that particular Oil, Gas and Mineral Lease from Mrs. Eddie Carnes Sullivan, et al, sole heir of Robert Carnes, deceased, to J. N. Roberts, dated July 12, 1951 and of record in the office of the Chancery Court of Forrest County, Mississippi in Lease and Deed Record Book 117 at page 23; and also, is executed *subject to* that particular Oil, Gas and Mineral Lease from Mrs. Eddie Carnes Sullivan, a widow, to J. N. Roberts, dated July 19, 1951 and of record in the office of the Chancery Clerk of Forrest County, Mississippi in Lease and Deed Record Book 117 at pages 33-34. (Emphasis supplied)

''It is understood and agreed by and between the parties hereto that taxes for the year 1953 will be prorated

between the Grantor and the Grantees herein, with the Grantor herein paying 4/12ths thereof and the Grantees herein paying 8/12ths thereof; and that the Grantees herein assume, and they will pay, taxes for all subsequent years.''

The amended cross bill charged that the lease, which Mrs. Sullivan delivered to Roberts, was void because the lands constituted homestead property, and her husband did not join in the conveyance; that the gas, oil and mineral lease was void for the additional reason that production was not acquired until June 6, 1956, and that the alleged owners and holders of the lease paid no delay rentals for the years 1953, 1954 and 1955, and that such lease had therefore lapsed; and that the oil company was estopped to claim under the deed from Mrs. Sullivan. There was an offer to do equity as far as bearing the proportionate cost of the well.

The prayer of the cross bill sought the cancellation of the original lease and all conveyances resting thereon, and that the cross-complainants should be declared to be the legal and rightful owners of all interest in the lands.

The Oil Company interposed a demurrer which set up that there was no equity on the face of the amended cross bill, and that said cross bill and the exhibit thereto showed that the deed which the cross-complainants obtained from Mrs. Sullivan was subject to the gas, oil and mineral leases owned by the cross-defendant Oil Company, and that the cross-complainants were bound by said leases as a matter of express contract.

The demurrer was sustained; and the cross-complainants having declined to plead further, the cross bill was finally dismissed. From the decree of dismissal the Bounds appealed.

The position of the appellants is that the lease was void because the land was Mrs. Sullivan's homestead and her husband did not join in the conveyance. Hence the appellants took the land clear of the lease notwithstand-

ing the above quoted provisions in their deed from Mrs. Sullivan. They further say that, if mistaken in the first contention, nevertheless they are still entitled to prevail because no delay rentals were paid between the time of their acquisition of the surface and the production of gas.

On the contrary, the appellee contends that the appellants took the land subject to the lease and are bound by it; and under the provisions of the lease, appellants became entitled to receive the delay rentals only after they had furnished the appellee with affirmative evidence of their acquisition of the title, and the cross-bill wholly failed to allege that the appellants furnished such evidence.

It is elemental that, on consideration of a demurrer, all facts well pled in the bill must be taken to be true. Likewise if the bill fails to allege any fact which must be proved in order to make out a case, it must be presumed that the fact does not exist.

As early as 1848, this Court, in Banks v. Evans, 10 S. & M. 35, said: ''He who comes into equity to get rid of a legal title, which is alleged to overshadow his own, must show clearly the validity of his own title, and the invalidity of his opponent's. He cannot expect a court of equity to set aside a legal title, upon a doubtful state of case.''

After her divorce on April 6, 1953, Mrs. Sullivan was at liberty to convey her property as she might please. On April 18, 1953, she conveyed the property to the appellants under the conditions stated. The appellants accepted the deed and they were bound by its express terms and conditions. In Wilson v. Gerard, 213 Miss. 177, 56 So. 2d 471, the deed from the Gerards to Wilson contained the provision ''Subject to one-half interest in mineral and oil rights as conveyed to Wm. Henderson.'' The bill had charged that Wm. Henderson was a fictitious person and that the exception was null and void. The point at issue was ''whether or not the one-half undivided interest in the minerals which the Gerards

purported to convey when they named Henderson as grantee became vested in their subsequent grantee Wilson under the deed . . . or remained in the Gerards as grantors of the said Wilson.'' In holding that Wilson did not become vested with the excepted one-half interest, which, the deed stated, was conveyed to Wm. Henderson, the opinion cited 26 C. J. S., Deeds, Sec. 140a, page 450, now Sec. 140 (1), pages 1009-10, to the effect that property which is excepted is not granted and does not pass to the grantee; and Georgia Vitrified Brick & Clay Co. v. Georgia Railroad & Banking Co., 148 Ga. 650, 98 SE 77, to the effect that ''Where a deed excepts from its provisions certain land as conveyed in a specified deed recited to have been formerly executed by the grantor to another person, such grantee does not thereby acquire the land so excepted . . .'' The opinion also cited Reynolds v. McMan Oil & Gas Co., 11 SW 2d 778, a Texas case, holding that there is no practical distinction between exceptions and reservations as the estate, in neither event, is included. See also Oldham v. Fortner 221 Miss. 732, 74 So. 2d 824, where it was reaffirmed that a party must rely upon the strength of his own title and not upon the weakness of his adversary, and that the exception of the minerals in that instance was valid and since, on that account, Bell, the grantee, acquired no interest therein, it followed also that his subsequent grantees did not acquire any interest therein.

In Kelley v. Haas, 262 SW 2d 687, a Kentucky case, in dealing with the meaning of the expression ''subject to . . . all mineral rights'', it was held that ''no mineral rights passed to the grantees under this deed.''

At the time when Mrs. Sullivan, after her divorce, conveyed the land to the Bounds, she knew that she had theretofore executed the mineral lease in question to Roberts. She did not disaffirm or repudiate that conveyance as she doubtless would have had the right to do under Sec. 332, Code of 1942, Rec. But, being fully aware thereof, she ratified it and undoubtedly purposed and intended

that it should be binding on her. To that end, she expressly referred to it in her deed to the Bounds and made the title, which they obtained, subject to the lease, which she had previously made to Roberts. It is clear, therefore, that she intended for that conveyance to be recognized as a valid one, and that she did not intend, in her deed to the Bounds, to convey to them any rights which she had already conveyed to Roberts. The Bounds accepted their deed subject to the rights of Roberts, and obviously, they acquired none of the rights which had been conveyed to him.

In Gardner v. Cook, 173 Miss. 244, 158 So. 150, and Oatis v. Mingo, 199 Miss. 896, 26 So. 2d 453, a subsequent conveyance had the effect of repudiating the deed of trust in the first instance and the deed in the second; and in Thompson v. Dyess, 218 Miss. 770, 67 So. 2d 721, it was held that Phelia, a daughter, living on the place, had the right to assert the invalidity of the deed. These cases are not in conflict with the present announcement.

The expression just following the description beginning with "In so far," etc. simply had the effect of quit-claiming any oil, gas and other minerals not included in the lease to Roberts.

Assuming that appellants would have been entitled to the delay rentals for the years stated, the amended bill did not aver that they had complied with the provision of the recorded lease, set out above, to furnish evidence of their ownership.

The Supreme Court of Arkansas, in Standard Oil Company of Louisiana v. Craig, 150 S. W. 2d 744, had under consideration the following provisions: "If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the conveyance hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or as-

signment or a true copy thereof.'' The lease containing this clause was duly recorded. The opinion in upholding the validity of that provision said: ''It would, in our opinion, impose an unreasonable burden upon the lessee to keep informed as to these possible changes in owner-ship, and especially so when, by the terms of the lease, it had the contractual right to be advised as to changes in ownership. The purpose of this provision in the lease was to enable the lessee to pay the royalty to the persons with whom it had contracted to pay without the peril of being compelled to pay royalty more than once.'' See also Shreveport-Eldorado Pipe Line Co. v. Bennett, 172 Ark. 804, 290 SW 929; Vol. 3 Summers Oil and Gas, Sec. 590, page 428.

Since the appellants, in their amended bill, made no claim that they had complied with the stated provision of the lease in furnishing evidence of their ownership, they were powerless to assert or maintain that the appellee, by reason of the failure to pay to them the delay rentals for the years claimed, had thereby lost its right and title under this lease. A compliance with the provision of the lease in this regard was requi-site to the statement of their case.

The cause must therefore be affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.