### KILLACKEY *v.* KILLACKEY.

1. APPEAL AND ERROR — DENIAL OF MOTION — NONPREJUDICIAL EFFECT.
    The error, if any, in denying motions to strike a cause from the calendar for reasons affecting the validity and regularity of the notice of trial and the note of issue, in the absence of a showing of prejudice to defendant's ability to make a full defense upon the merits, does not warrant a reversal.

2. MARRIAGE—PROOF—SUFFICIENCY.
    As between the parties and their privies, a certified copy of a decree of divorce is sufficient evidence of their marriage.

3. SAME—VALIDITY—PRESUMPTIONS.
    In the absence of any evidence as to the date of a prior marriage, or as to the relation of the parties since such marriage, or as to the continuance or termination of such relations, the presumption of legality which attaches to a second marriage is *held*, not to have been impeached.

4. SAME—PERSONAL STATUS—PRESUMPTIONS.
    In the absence of any evidence to the contrary, the presumption

arises that from their marriage until the time of filing a bill for a divorce, the parties sustained the usual relations of husband and wife.

5. EJECTMENT—DOWER—TITLE—EVIDENCE.

In an action of ejectment to recover a dower interest in land, proof that both parties claim the same source of title is suffi. cient evidence thereof without tracing it through a chain of conveyances to the government.

6. DOWER—ANTENUPTIAL AGREEMENTS—DEEDS—RELEASE.

In an action of ejectment to recover a dower interest in land, it appeared that the husband, prior to a second marriage, conveyed certain land to a son, imposing upon it the burden of an annual payment to the intended wife, in case the marriage occurred and she survived him; that, after the marriage, the husband inherited certain land and conveyed it without the wife's signature; and that, after the husband's death, the widow, on the payment of a lump sum, executed a release of the annuity provided in the first deed. *Held*, that under section 8934, 2 Comp. Laws, the widow was not barred of her dower interest in said inherited lands, it being conveyed without obtaining her signature, nor was it barred by section 8933, 2 Comp. Laws, since she did not assent to the pecuniary provisions made for her benefit prior to the marriage.

7. SAME—DIVORCE—SEPARATE MAINTENANCE—EFFECT.

Where, on a decree for separate maintenance, no provision was made for a division of the property and only a small sum was awarded for the wife's support, and subsequently the husband inherited lands which he conveyed without the wife's signature, the widow was not barred of her dower interest in the land so conveyed.

8. JUDGMENTS—AMENDMENTS.

A defect in a judgment in an action of ejectment to recover a dower interest in lands, awarding plaintiff one-third of the rent of the premises from the death of the husband, may be treated as surplusage, leaving such question to be settled in the supplemental proceedings.

Error to Chippewa; Steere, J.    Submitted January 21, 1909.    (Docket No. 68.)    Decided March 30, 1909.

Ejectment by Margaret Killackey against Robert Kil-

lackey and others.  There was judgment for plaintiff, and defendants bring error.  Affirmed.

*John W. Shine*, for appellants.

*F. T. McDonald* and *M. M. Larmonth*, for appellee.

·BLAIR, C. J.  This is an action of ejectment for the recovery of dower, tried by the court without a jury.  Prior · to the calling of the case, counsel for defendants made an oral motion to strike the case from the docket, for various reasons affecting the validity and regularity of the notice of trial and the note of issue.  This motion was overruled, and a like motion, made when the cause was called for trial, was also overruled.  At the request of defendants, the court made the following findings:

## "FACTS.

"1. This action in ejectment is brought to recover dower in the lands described in plaintiff's declaration.

"2. Plaintiff and James Killackey, Sr., father of defendant Robert Killackey, were married by Rev. J. J. Connolly, S. J., a Catholic priest, on September 6, A. D. 1897.  Both had been previously married.  The name of plaintiff's former husband was Greenwood.

"3. At the time of their marriage she was over 50 years of age, and he (James Killackey, Sr.) was over 75 years of age.  He was possessed of some property, and she had but little.  Just prior to their marriage he imposed upon some land he conveyed a burden, providing for payment to her of $100 per year, in case he married her and she survived him.  She has since released her claim in consideration of $500.

"4. They lived together as husband and wife for a little over a year, when trouble arose, and she filed a bill for divorce from bed and board and separate maintenance.  This was contested.  Her claim was maintained and a decree granted, as prayed for, allowing her 'separate maintenance' of $6 per month and costs of suit.

"5. In June, 1901, after the rendition of said decree, he inherited the property involved in this suit from his son James Killackey, who died intestate and unmarried.

156 MICH.—9.

"6. James Killackey, Sr., soon thereafter deeded said property to defendant Robert Killackey.

"7. In September, A. D. 1904, said James Killackey, Sr., died.

"8. No evidence was offered of assignment of dower or demand of possession, and no records were offered to prove chain of title from the government to him, but a deed was put in evidence showing that Robert Killackey, defendant, claims title to said lands from James Killackey, Sr., from which source plaintiff also claims title.

"9. Defendant Michael Miller is shown to have been a tenant on the farm lands mentioned in the declaration, and defendant Corriveau to have been occupying one of the city lots for storing wood. No proof is given as to acts of possession, or of the identity of Mary Miller and Catherine Killackey, named as defendants.

"10. All files, records, and exhibits in this case are hereby made a part of these findings.

## "Conclusions of Law.

"1. There being no testimony whatever produced on the part of the plaintiff against the defendants Mary Miller and Catherine Killackey, judgment will be entered in their favor, with costs.

"2. It is contended that no legal marriage is proven, because plaintiff is shown to have been previously married to one Greenwood, and no evidence is offered to show that he is dead, or that she has been divorced from him. It is true that both parties are shown to have been previously married, and the record is silent as to what became of their former mates. In the proceedings between them for limited divorce and separate maintenance, which was hotly contested, the records, which are in evidence, show the marriage admitted. The presumption is that the parties would not contract a bigamous marriage and thereby commit a crime. The presumption is that the clerk who issued the marriage license, and the clergyman who performed the ceremony, performed their official duty, and ascertained that no legal impediments existed against a legal marriage. We find as a conclusion of law, under the evidence before us, that the parties were legally married, and

"3. That they bore to each other the legal relation of husband and wife until his death. The partial divorce did not dissolve the marriage tie. A divorce from bed

and board is not such a severance as would bar dower. In that proceeding the court made no division of their property interests, only requiring a small contribution from him for her maintenance. The property involved in this suit did not then belong to him, and could not have then been taken into consideration.

"4. Neither demand for possession nor proceedings for assignment of dower are prerequisite to ejectment for recovery of same.

"5. Proof that both parties claim the same source of title is sufficient evidence of title, without tracing it through a chain of conveyances to the government.

"6. Miller and Corriveau, as parties in possession, and Robert Killackey as grantee of James Killackey, Sr., are properly made defendants herein, and shown to be necessary parties, before recovery can be had.

"7. The evidence establishes, in our opinion, a state of marriage between plaintiff and James Killackey, Sr., seisure by him, during coverture, of the property mentioned in the declaration as an estate of inheritance, and his subsequent death, giving her a right of dower therein, which she is entitled to recover in this action.

"Judgment will be entered accordingly against the three defendants last named."

Defendants put in no testimony whatever, and bring the record to this court for review upon numerous assignments of error, the principal ones of which we proceed to discuss.

1. The court's refusal to grant defendants' motion to strike the cause from the calendar. There is nothing in the record to indicate that the defendants' ability to make a full defense upon the merits was prejudiced; and, without such a showing, this court must regard the error, if any was committed, as not warranting a reversal, if indeed such error were reviewable upon writ of error. *People* v. *Bacon,* 18 Mich. 247; *Worth* v. *Hand,* 30 Mich. 264.

2. That there was no competent evidence of plaintiff's marriage to James Killackey. The plaintiff testified that she was married to Killackey, September 6, 1897, by Father Connolly; that at the time of the marriage her

name was Margaret Greenwood, but that her folks always called her "Lottie, for short." Against objection and exception a marriage license, authorizing the marriage of James Killackey "and Mrs. Lottie Greenwood," and the following marriage certificate, were received in evidence:

"CERTIFICATE OF MARRIAGE

"Between Mr. James Killackey and Mrs. Margaret Greenwood.

"I hereby certify that, in accordance with the above license, the persons herein mentioned were joined in marriage by me, at Sault Ste. Marie, county of Chippewa, Michigan, on the 6th day of September, A. D. 1897, in the presence of ——, of Sault Ste. Marie, —— and ——, of Sault Ste. Marie.

"As witnesses.

"J. J. CONNOLLY, J. F.
"Name of Magistrate or Clergyman.
"Pastor Official Title."

A certified copy of a decree of divorce from bed and board in favor of Lottie Killackey as complainant, and against James Killackey as defendant, granted by the judge trying this suit on the 16th day of September, 1899, and filed November 13, 1899, was also received in evidence. As between the parties and their privies, the decree was sufficient evidence of the marriage. 24 Am. & Eng. Enc. Law (2d Ed.), p. 717, par. 5, p. 748d; *Carr* v. *Brick*, 113 Mich. 664; *Burgess* v. *Stribling*, 134 Mich. 33, 144 Mich. 532; *Bechtel* v. *Barton*, 147 Mich. 318.

3. That plaintiff's marriage to Killackey was void because of a previous marriage. All that appeared with reference to her previous marriage was the bare fact that she had been, at some time previously, married to a man named Greenwood. In the absence of any evidence whatever as to the date of plaintiff's marriage to Greenwood, or as to their relations since that marriage, or as to the continuance or termination of such relations, the presumption of legality which attaches to the second marriage must be held not to have been impeached. *Wagoner* v.

*Wagoner*, 128 Mich. 635; *Smith* v. *Fuller*, 138 Iowa, 91; *Coal Run Coal Co.* v. *Jones*, 127 Ill. 379.

4. There was no testimony on which to base the finding that they lived together as husband and wife for "a little over a year." The following constitutes the entire testimony on this subject:

"*By Mr. Shine: Q.* Where have you lived since the fall of 1895 ?

"*A.* I lived in the Soo.

"*Q.* And do you know where Mr. Killackey lived since that time, James Killackey, Sr.?

"*A.* Where he lived, did you say ?

"*Q.* Where did he live, James Killackey, Sr., since the fall of 1898 ?

"*A.* I don't know where he lived.   He lived all over, I guess, with his folks.

"*Q.* He didn't live with you, did he ?

"*A.* No, sir."

There being no evidence to the contrary, the presumption is that from their marriage in September, 1897, to the fall of 1898 the parties sustained the usual relations of husband and wife.

5. That there was no sufficient proof that Killackey was seised during marriage of an estate of inheritance in the lands in question.   As stated in appellants' brief:

"This question arose in the following manner:   In the trial plaintiff offered in  evidence a deed from James Killackey, Sr., to Robert Killackey, Sr., conveying the land in question, and the files from the probate court in the estate of James Killackey, Jr., in which the real estate was listed as part of the estate, and an order determining James Killackey, Sr., sole heir at law.   But plaintiff offered no proof of record or paper title running back to the government, nor proof that James Killackey ever occupied the premises, or that he acquired it from any person who previously occupied it, or that any of them occupied it under warranty deed or made improvements thereon."

The trial judge correctly held:

"Proof that both parties claim the same source of title

is sufficient evidence of title without tracing it through a chain of conveyances to the government."

See *Drake* v. *Happ*, 92 Mich. 580.

6. An antenuptial agreement and settlement barred dower. As stated in appellants' brief:

"This agreement was made shortly before the time of the alleged marriage. By it James Killackey, Sr., made provision for his widow in case he should marry. A charge was made on certain real estate conveyed to Timothy Killackey, of $100 a year. The plaintiff afterwards settled with the heirs of Timothy Killackey for $500. So far as the record shows, Killackey had no other property. There was evidently an understanding that by arranging for this annuity for plaintiff it was intended to be in lieu of any claim on him or his property, if he had any. Even if not assented to by plaintiff, she has elected to take it, and such election bars dower."

The plaintiff testified:

"Why he must have been a man in the neighborhood of 80, I suppose; 70 or 80, I suppose. Just before September, 1897, there was an arrangement between him and me relative to the payment of $100 a year.

"*Q.* Since Mr. Killackey's death you have been getting that $100 a year, have you?

"*A.* Yes; I got that.

"*Q.* And that was made a charge or security in some way on some of the real estate—some farm?

"*A.* That was off Tim's farm. He was a son of old man Killackey's. Yes; this same Killackey, Sr., referred to in these pleadings. I made a settlement with the owners of the land in full. I got $500 from them for a release of my claim for life against it. * * * Mr. Killackey was to receive the $100 income off the farm until he died, and I was to get it after.

"*Q.* Who did get it?

"*A.* I got $500.

"*Q.* But during the lifetime of Mr. Killackey who received the $100 a year off the income of the farm?

"*A.* I don't know. He told me once he didn't get anything. I never got anything off the income of the farm except the $500. On my separation from Mr. Killackey I was allowed $6 a month. That was all paid me but the last month.

"*Q.* Did you ever receive from Mr. Killackey either any property, real estate, or money ?

"*A.* No, sir.

"*Q.* Anything except the $500 in the settlement you made ?

"*A.* That is all on the income of the farm, and this $6 a month on my separation from him. At the time I married Mr. Killackey he said he was possessed of considerable property."

Plaintiff, in consideration of $500, executed a quitclaim deed to the heirs at law of Timothy Killackey, June 23, 1906. The deed contained the following provision :

"This deed is given and the consideration thereof accepted in full satisfaction of any and all claims which said first party may have against the estate of Timothy Killackey, deceased, by way of annuity or otherwise, or against said lands as the widow of the said James Killackey, deceased."

The deed from James to his son Timothy was made before the marriage, and nearly four years before he inherited the property involved in this suit from his son James. Mrs. Killackey was not a party to the warranty deed by which the lands were conveyed by James, Sr., to his son. The plaintiff's dower is not barred by section 8934, 3 Comp. Laws, because that section does not relate to lands conveyed by the husband without the wife's signature, as in this case, during his lifetime. *Westbrook* v. *Vanderburgh*, 36 Mich. 30. Her dower is not barred under the provisions of section 8933, because her assent to the pecuniary provision for her benefit was not given, as specifically required by that section.

7. The decree for separate maintenance bars dower in lands thereafter acquired. Such a decree does not bar dower as a general rule. 14 Cyc. p. 934; 9 Am. & Eng. Enc. Law (2d Ed.), p. 852. Under the circumstances of this case, and for the reasons stated by the circuit judge, we concur in his conclusion of law.

8. That the judge had no right to enter judgment for plaintiff for one-third of the rent of the premises from

September 30, 1904.   Plaintiff's counsel submit that the provision in the judgment for the recovery of the rent is mere surplusage, and that the whole matter will be open for consideration in the supplemental proceedings, suggesting damages in accordance with the provisions of section 10988 et seq., 3 Comp. Laws.   An amendment of the judgment in accordance with this concession will sufficiently protect appellants, if such amendment is deemed necessary.

There are no other questions which, in our opinion, require consideration, and the judgment is affirmed, with costs against the defendant Robert Killackey.

GRANT, MONTGOMERY, MOORE, and McALVAY, JJ., concurred.