MAY *v.* MEADE.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—NOTICE OF CLAIM FOR COMPENSATION.

> Testimony that an industrial accident resulting in the death of an employee was reported in due season by the employer, and that during the investigation thereof by the insurer it was shown the employee's marriage certificate by his wife, the department of labor and industry was justified in assuming that the employer was made aware of the claim of a minor dependent son for compensation under the workmen's compensation act.[1]

2. MARRIAGE—VALIDITY OF MARRIAGE OF HUSBAND OF FULL AGE WITH WIFE UNDER AGE OF CONSENT.

> Notwithstanding that, under 3 Comp. Laws 1915, § 11362, a female under the age of 16 years was incapable of contracting marriage, if such female contracted marriage with a man above the full age of 18 years before Act No. 352, Pub. Acts 1921, became effective, and they cohabited as husband and wife after the female reached the full age of 16 years, such marriage became valid *ab initio*, and the husband could not at any time assert its invalidity.[2]

3. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—CLAIM FOR COMPENSATION.

> The claim of a brother of deceased employee for compensation under the statute, *held*, properly disallowed because not made in season.[3]

4. SAME—EVIDENCE—ADMISSIBILITY.

> In proceedings by the guardian of a minor son for compensation under the statute for the death of his father, the department of labor and industry properly refused to consider the offer of the father's brother, made in proceedings in which he was claimant and dismissed because not made in season, to show that at the time of the father's marriage to claimant's mother he had a wife in England.[4]

[1]Workmen's Compensation Acts, C. J. § 103; [2]Marriage, 38 C. J. §§ 12, 13; [3]Workmen's Compensation Acts, C. J. § 103 (Anno); [4]Id., C. J. § 113; 22 L. R. A. (N. S.) 1202; L. R. A. 1916C, 740; 18 R. C. L. 416; 3 R. C. L. Supp. 811.

5. SAME—VALIDITY OF MARRIAGE—PRESUMPTIONS.

In said proceedings, testimony by claimant's mother that she left claimant's father because, after her marriage to him, she learned from letters that he had a wife in England, was properly held insufficient to overcome the presumption that the second marriage was valid; in the absence of evidence to the contrary, the presumption being that the former marriage was legally dissolved.[5]

6. BASTARDS—MARRIAGE—VALIDITY OF MARRIAGE.

That a wife, on learning that her husband had another wife in England, left him, and, without divorce or annulment, married another, would not have the effect of bastardizing a son born to her and her first husband while they were living together as husband and wife.[6]

7. MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — DEPENDENCY OF MINOR SON.

Testimony that the father, up to the time of his death, fully recognized the dependency upon him of his minor son, who was living with the mother, who had left her husband and remarried, and that he contributed $20 a month for the support of his son and also furnished clothing for him, was sufficient to justify the finding of total dependency of the son upon the father by the department of labor and industry.[7]

8. SAME—INCOME—EARNINGS—DEPENDENTS.

That a laborer, at the time of his accidental death, had a bank account of $1,000, would not affect the fact that his minor son was dependent upon his father's earnings, in the absence of evidence that the father had any property from which the money in the bank came, in whole or in part.[8]

Certiorari to Department of Labor and Industry. Submitted June 9, 1926. (Docket No. 37.) Decided October 4, 1926.

Ruby May, guardian of Samuel John Merritt, a minor, presented a claim for compensation against William G. Meade for the accidental death of Thomas J. Merritt in defendant's employ. From an order

[5]Marriage, 38 C. J. §§ 104, 115; [6]Bastards, 7 C. J. § 15; Marriage, 38 C. J. § 114; [7]Workmen's Compensation Acts, C. J. §§ 49, 114; [8]Id., C. J. § 49 (Anno).

awarding compensation, defendant and the Southern Surety Company, insurer, bring certiorari.    Affirmed.

*Derham & Derham,* for appellants.

*Clarence E. Lott,* for appellee.

WIEST, J.    This is certiorari to the department of labor and industry.    Samuel John Merritt, applicant for compensation, is a son of Thomas J. Merritt, was born February 22, 1913, during wedlock and cohabitation of his father and mother.    His parents were married March 15, 1909, with ceremony performed by a justice of the peace.    At the time of the marriage Mrs. Merritt was about 15 years of age.    In 1917, Mrs. Merritt left her husband because she learned from letters that he had a wife in England, took the boy with her, and, without annulment, contracted marriage with another man.

October 1, 1923, Thomas J. Merritt died from accidental injuries received while in the employ of the defendant Meade.    From the time his wife parted from him to the time of his death Thomas J. Merritt contributed $20 per month for support of, and also furnished clothing for his son.    The department awarded the son $14 per week for 300 weeks as a dependent.

The defendant surety company reviews by writ of certiorari, claiming

(1) A proper claim for compensation was not made by plaintiff.

(2) The plaintiff is the illegitimate son of the deceased, was not living with him at the time of the accident, and, therefore, is barred as a dependent under the compensation law.

(3) The evidence does not show that the plaintiff was a total dependent upon the deceased.

(4) The evidence does not show that the plaintiff was totally dependent upon the earnings of the deceased.

The department found that a proper claim for compensation was made in behalf of the child.

The testimony discloses a report of the accident in due season by the employer, and activity by way of investigation taken up by the surety company. The mother of plaintiff was called upon and produced her marriage certificate and it is fair to assume, as did the department, that not only the surety company but the employer was well aware of the claim for compensation.

Two impediments to the marriage are asserted. (1) The woman was but 15 years of age, and, therefore, incapable of contracting marriage. (2) The man had a wife in England. The statute (3 Comp. Laws 1915, § 11362) renders a female under the full age of 16 years incapable, in law, of contracting marriage. If such a female contracted marriage with a man above the full age of 18 years before Act No. 352, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 11386 [1]), became effective, and they cohabited as husband and wife after the female reached the full age of 16 years, such a marriage became valid *ab initio.* The husband could not at any time assert invalidity of the marriage. *People* v. *Slack,* 15 Mich. 193; *People* v. *Pizzura,* 211 Mich. 71 (10 A. L. R. 405). The parties cohabited as husband and wife for years after the wife reached the full age of 16 years, and the child, with rights here involved, was born during the period the marriage had become valid as to both parties.

The evidence discloses that the mother of plaintiff learned that her husband had a wife in England, and believing, on that account, that her marriage was void and required no decree of annulment, left her husband and married another man.

A brother of deceased made claim for compensation but the department held his claim was not made within season and disallowed the same. At the hearing of the brother's claim it was sought to show that deceased

at the time of his marriage, in 1909, had a wife in England, and letters rogatory were asked to take the testimony of a witness in England upon the subject. The department refused to issue the letters and held that the brother could not press his claim because not made in season. The record supports such decision. The department refused, and we decline to consider the offer made in the case of the brother to show the existence of the marriage in England. This leaves the issue of whether Thomas J. Merritt had a wife, when he married in 1909, to rest upon the testimony given by the second wife as to her reason for leaving her husband in 1917. The department held this was not sufficient evidence to overcome the presumption of a valid second marriage; citing *Wagoner* v. *Wagoner*, 128 Mich. 635.

In *Killackey* v. *Killackey*, 156 Mich. 127, this court held, quoting from the syllabus:

"In the absence of any evidence as to the date of a prior marriage, or as to the relation of the parties since such marriage, or as to the continuance or termination of such relations, the presumption of legality which attaches to a second marriage is held, not to have been impeached."

This is in accord with the almost unbroken line of authority. We cite but a few of the authorities:

In 38 C. J. p. 1343, it is stated:

"A prior marriage when asserted in derogation of a subsequent marriage of one of the parties with a different person must be established by strict proof."

In 18 R. C. L. p. 416, it is stated:

"The law and public policy favor matrimony, and when the celebration of a marriage is once shown, the contract of marriage, the capacity of the parties, and, in fact, everything necessary to the validity of the marriage, in the absence of proof to the contrary, will be presumed. * * * This presumption of legality

is said to be one of the strongest known to the law, especially where the legitimacy of children is involved, for the law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy."

And on page 417:

"When a marriage has been consummated in accordance with the forms of law, it is presumed that no legal impediments existed to the parties entering into such marriage, and the fact, if shown, that either or both of the parties have been previously married, and that such wife or husband of the first marriage is still living, does not destroy the *prima facie* legality of the last marriage. The presumption in such a case is that the former marriage has been legally dissolved, and the burden that it has not rests upon the party seeking to impeach the last marriage."

In *Farr* v. *Farr*, 190 Iowa. 1005 (181 N. W. 268), it was said:

"The fact of the ceremonial marriage being admitted, the law presumes it to have been a legal marriage, and that neither party thereto became guilty of the crime of bigamy; and, if it be further admitted that either the husband or wife had been previously married, it will be further presumed, in support of the legality of the second marriage, that the former husband or wife is dead or has been divorced. * * *

"'If it be said that this rule requires one to prove a negative, it may be said in answer that very frequently one has the burden of proving a negative. Where a negative is essential to the existence of a right, the party claiming such right has the burden of proving it' (*Leach* v. *Hall* 95 Iowa, 611 [64 N. W. 790])."

In *Howard* v. *Kelly*, 111 Miss. 285 (71 South. 391, Ann. Cas. 1918E, 1230), the second marriage was a common-law one. The court stated:

"We are persuaded that every presumption should then be indulged in favor of the legality of a union thus shown in the same way and to the same extent as the law indulges in favor of a ceremonial marriage.

*  *  *  We simply assent to the holding repeatedly
announced, not only by our own court, but by the courts
of other jurisdictions, that the law favors marriage and
indulges the presumption that a marriage once shown is
legal until the contrary is established by competent
testimony.    The law encourages marriage, and the
courts have repeatedly announced that the law will
presume in favor of marriage and legitimacy, and not
concubinage and bastardy.    This presumption of in-
nocence is a strong presumption, and throws the pro-
tecting arms of the law around innocent children, the
issue of a marriage clearly established, and casts a
burden upon him who would take away the good name
of a child or defeat its property rights on the ground
and charge of illegitimacy."

The testimony does not impeach the presumption of
validity of the marriage.    The action of plaintiff's
mother, in leaving his father, and, without divorce or
annulment, marrying another, cannot be held to
bastardize the child.    The department was clearly
right, on this record, in finding the child legitimate.

Up to the time of death the father fully recognized
the dependency of the child upon him, and the depart-
ment was not in error in finding total dependency.

It is claimed the father had money in a bank, and
the point is made that the child was not dependent
upon his earnings.    Our attention is directed to
*Blozina* v. *Castile Mining Co.*, 210 Mich. 349.    In that
case the deceased had an income independent of earn-
ings and the case was remanded to take proof to de-
termine whether claimant was dependent upon the
earnings of deceased rather than contributions from
income from an investment.    We pass the point that
the testimony of the bank account of $1,000 was given
in the case of the brother, and, therefore, not in evi-
dence in this case.    There is no showing that de-
ceased had any property from which the sum in the
bank came in whole or in part.    He was a laboring
man and if the money in the bank was surplus earn-

ings its character was not changed by deposit, and, whether he supported the child with money taken from his last pay for labor or from former pay laid aside and employed for such purpose when needed, makes no difference.    The finding of the department is supported by the evidence.    We find no error.

The award is affirmed, with costs to plaintiff.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, CLARK, and McDONALD, JJ., concurred.