### BURNS v. STEVENS.

1. MARRIAGE—COMMON-LAW MARRIAGE VALID.
   Common-law marriages are valid in Michigan.[1]

2. SAME—TEST OF VALIDITY OF COMMON-LAW MARRIAGE.
   The test as to the validity of a common-law marriage is whether the parties did presently agree to take each other for husband and wife, and live together in that relation.[2]

3. SAME — COHABITATION ALONE INSUFFICIENT TO ESTABLISH COMMON-LAW MARRIAGE.
   In a suit to enjoin defendant from representing herself as plaintiff's common-law wife, a decree in favor of the plaintiff was justified, where there was no proof of a present agreement to take each other for husband and wife, although the testimony established the fact that they lived together and cohabited for several years.[3] SNOW, FELLOWS, and WIEST, JJ., dissenting, on the ground that a court of equity should not lend assistance in freeing plaintiff, who does not come into court with clean hands, from entanglements of his own creation.

Appeal from Wayne; Mandell (Henry A.), J.  Sub-

[1]Marriage, 38 C. J. § 88; [2]Id., §§ 90, 94; [3]Injunctions, 32 C. J. § 430; Marriage, 38 C. J. § 90; L. R. A. 1915E, 8; 18 R. C. L. 391; 3 R. C. L. Supp. 808; 4 R. C. L. Supp. 1184; 5 R. C. L. Supp. 981.

mitted June 17, 1926.　(Docket No. 47.)　Decided October 22, 1926.

*John R. Rood,* for plaintiff.

*Edward H. Kennedy, Sr.,* for defendant.

SHARPE, J.　Plaintiff complains that the defendant has represented to his employer and to societies of which he is a member and to others that she is his common-law wife, and that she has assumed his name as such.　He alleges that such representation on her part is false; that his reputation is liable to be impaired thereby, and that by reason thereof he is liable to lose his position and to be refused recognition as a single man.　He prays that defendant be enjoined from further repetition of such representations and from using his name as his wife, and that he "be decreed to be free from any matrimonial alliance or espousal with the said defendant."　In her answer defendant avers that she and the plaintiff entered into a common-law marriage in the month of January, 1919, and that they lived together as man and wife until on or about May 6, 1922, during which time she was supported by him and introduced by him to others as his wife.　After a consideration of the proofs offered, the trial court concluded that no marriage relation ever existed between the parties, and entered a decree as prayed for by plaintiff.　Defendant appeals.

While plaintiff admits that he many times proposed marriage to defendant, he testified that she at all times refused to marry him.　He admits that he lived at her home from January, 1919, until May, 1922, but

testified that he paid for his room while there.    What are known as common-law marriages are recognized as valid in this State.    *People* v. *Pizzura,* 211 Mich. 71 (10 A. L. R. 405), and cases cited.    In *Judson* v. *Judson,* 147 Mich. 518, it was said:

"The test is this: Did they presently agree to take each other for husband and wife, and live together in that relation?"

It is not sufficient that they agree to live together as husband and wife with the intention to marry at some future time.    *Griffin* v. *Griffin,* 225 Mich. 253.

A careful reading of the record satisfies us that no such marriage was ever entered into between these parties.    On June 6, 1921, they entered into a land contract to purchase a cottage at Ox Bow lake in Oakland county, in which their names Edward Burns and Clara Stevens appear as vendees, and defendant testified that she insisted on having it so.    Each of them contributed a part of the down payment.    An acquaintance, Mrs. Matilda Geiger, testified that in March, 1922, she heard plaintiff ask defendant "for an answer to his proposal of marriage," and that defendant said, "I would never marry you, I have no intention of marrying you," that defendant told her they "never had anything to do with one another, that was what is claimed then as a common-law wife," and that she then said to defendant, "Clara Stevens, I shall never call you Mrs. Burns again.    Never, if that is the case."    Several other witnesses testified to statements of similar import made by her.

Defendant as a witness testified that their married relation began in 1919 and continued until their separation in 1922.    She fails to state any particular occasion when an agreement to live together as husband and wife was entered into.    She admits that she signed her name "Clara Stevens" to several receipts given by her in 1922, that this name at all times ap-

peared in the telephone book, and states that they were delaying the ceremony of marriage until they had the cottage paid for.    There is proof that plaintiff introduced defendant as his wife, and, while he denies it and she also denied it to Mrs. Geiger, the record is quite convincing that they occupied the same bed and cohabited together for several years.    But the testimony does not establish a common-law marriage.    It lacks the element of a present agreement to take each other for husband and wife.

The decree is affirmed, with costs to appellee.

BIRD, C. J., and STEERE, CLARK, and McDONALD, JJ., concurred with SHARPE, J.

SNOW, J. (*dissenting*).    I am not in accord with the opinion of Mr. Justice SHARPE that the defendant should be enjoined from claiming that she is the wife of plaintiff, or that he "be decreed to be free from any matrimonial alliance or espousal with the said defendant."    I agree with his conclusion however that "the record is quite convincing that they occupied the same bed and cohabited together for several years." And it might be added that the record is also quite convincing that he only ceased such cohabitation when he became enamored of another woman, and then abandoned defendant.

No property rights are here involved, and their marriage *status,* or the question of whether or not there was a common-law marriage, is of no present importance.    I see no reason why the courts should give assistance, of the kind desired, to a man whose improper relations with a woman, with whom he has lived in crime for many years, has so entangled him that it has become a debatable question whether he is married to her or not.    The case is sordid and shabby, and the testimony is convincing of but one thing—that the parties were living together in a

manner tending to corrupt the public morals, and in disregard of all established rules of society.     Plaintiff does not come into court with clean hands.     He put himself voluntarily, and the record shows eagerly, into the position he now complains of, and if it has involved him no one can be blamed but himself.     His flagrant disregard of all tenets of decency bars his right to the equities he seeks, and imposes upon him the obligation of paying the penalties of his own misconduct.

The decree should be reversed and the bill dismissed, with costs to defendant.

FELLOWS and WIEST, JJ., concurred with SNOW, J.