*In re* ESTATE OF OSBORN.

OSBORN *v.* OSBORN.

1. Marriage—Conflict of Laws.
   Validity of a ceremonial marriage is to be determined by the law of the State in which performed.

2. Same—Concubinage.
   Marriage is favored by the law; concubinage is odious.

3. Same—Presumptions—Capacity—Validity.
   When a marriage has been regularly solemnized and the parties live together as man and wife, there is a presumption that the parties had capacity to contract and of existence of all other facts necessary to render it valid; and this presumption prevails until the contrary appears.

4. Same—Invalidity—Burden of Proof—Evidence.
   One attacking validity of a ceremonial marriage has burden of showing invalidity by clear, distinct, positive and satisfactory proof.

5. Same—Living Spouse—Effect.
   A marriage is void where one of the parties had a living spouse at the time of its performance.

6. Same—Ceremony and Cohabitation—Living Spouse.
   One attacking validity of a ceremonial marriage followed by cohabitation under belief of parties they are lawfully married, on ground a party thereto had a living spouse, must show such former spouse was living at time second marriage was entered into.

7. Death—Presumption Arising From Seven Years' Absence.
   Presumption of death arising from absence of a person for seven years when nothing has been heard from him is rebuttable.

8. Marriage — Presumptions — Innocence — Death of Former Spouse.
   One who enters into a second marriage in good faith, honestly believing former spouse dead by reason of abandonment and not having been heard from, is presumed innocent although

such marriage is performed before expiration of seven years from abandonment, and such presumption is the stronger and prevails over presumption of life for such period of seven years where neither presumption is aided by proof of facts of circumstances corroborating it.

9. SAME—EVIDENCE.

Ceremonial marriage performed in Georgia between man now deceased and woman whose previous husband had abandoned her about six years theretofore *held*, a valid marriage according to the law of that State and, not having been dissolved, she became his widow upon his death notwithstanding that subsequent to their intermarriage he deserted her and cohabited with plaintiff as his common-law wife unbeknownst to wife by ceremonial marriage for about 10 years before his death.

Appeal from Wayne; Ferguson (Homer), J. Submitted October 18, 1935. (Docket No. 114, Calendar No. 38,573.) Decided December 10, 1935.

Edward Osborn petitioned the probate court for the appointment of Francis E. Chadwick as administrator of the estate of Jesse Osborn, deceased. Petition granted. Gertrude Osborn petitioned the probate court for the removal of Francis E. Chadwick as administrator. Petition denied. Plaintiff appealed to circuit court. Affirmed. Plaintiff appeals. Affirmed.

*Guiney & Guiney,* for plaintiff.

*Bryant, Lincoln, Miller & Bevan,* for defendant estate, administrator and Mattie Osborn.

WIEST, J. Plaintiff petitioned the probate court to vacate the appointment of an administrator of the estate of Jesse Osborn, deceased, and issue letters of administration to her, on the ground that she is the widow of the deceased, and Mattie Osborn, named as widow in the original petition for admin-

istration, is not the widow of the deceased. The petition was denied in the probate court and upon appeal in the circuit court, and is here for review. The facts are stipulated.

In 1909 Mattie Stocks (now Mattie Osborn) was married to Joe Jacob Stocks in the State of Georgia and, shortly thereafter, Mr. Stocks left Georgia, because he was in trouble, and has never been heard from, except through a rumor that he was dead. Without a divorce, but after her father had told her he had heard that Mr. Stocks was dead, and on July 4, 1915, in Georgia, Mattie Stocks married Jesse Osborn. After the marriage they lived in Georgia until 1917, when they moved to Dayton, Ohio, where Mr. Osborn deserted his wife and went to the city of Detroit, where he resided until his death on March 26, 1934.

Plaintiff claims that, in December, 1922, in the city of Detroit, she contracted a common-law marriage with Jesse Osborn, and they cohabited as husband and wife until his death. Such cohabitation was wholly unknown to Mattie Osborn. Plaintiff believed the common-law marriage to be valid. There is no claim of dissolution of the ceremonial marriage between Mattie and Jesse.

The validity of the ceremonial marriage between Mattie Stocks and Jesse Osborn, in Georgia, is to be tested by the law of that State.

*Murchison* v. *Green,* 128 Ga. 339 (57 S. E. 709, 11 L. R. A. [N. S.] 702), involved the point here in issue, and it was there held:

"Marriage is favored by the law; concubinage is odious. * * * When a marriage has been regularly solemnized and the parties live together as man and wife, there is a presumption that the parties had capacity to contract the marriage, and of the existence of all other facts necessary to render the mar-

riage valid; and this presumption prevails until the contrary appears. The burden is upon him who attacks the validity of the marriage to show that it is invalid, by clear, distinct, positive, and satisfactory proof. * * * If at the time of the marriage one of the parties had a living spouse, of course the marriage is void. But it is incumbent upon him who attacks the marriage upon this ground to overcome the presumption of its validity, resulting from the solemnization of the marriage ceremony, and cohabitation by the parties under the belief that they are lawfully married, and to establish that the former spouse was living at the time that the second marriage was entered into.

"As a general rule the law will presume the death of a person, after his absence for seven years, when nothing has been heard from him. This is, however, a mere presumption and may be rebutted by proof. If one enters into a second marriage contract in good faith, honestly believing that the former spouse is dead, by reason of the fact of abandonment and not having been heard from, it is not indispensable that seven years should have elapsed from the time that the spouse was last heard of, in order to establish the validity of the second marriage. While there may be a presumption of life when the period between the time the spouse was last heard from and the second marriage is less than seven years, under such circumstances, this presumption of life conflicts with the presumption of innocence which the law raises in favor of the party contracting the second marriage. The presumption that the party contracting the second marriage is innocent of the crime of bigamy is, under such circumstances, stronger than the presumption that the former spouse is in life. Where the presumption of innocence and of the validity of the marriage conflicts with the presumption of life, and neither presumption is aided by proof of facts or circumstances corroborating it, the presumption of the validity of the

marriage has generally been held to be the stronger, and to prevail over the presumption of the continuance of the particular life; and this has been held although the time elapsing between the last knowledge of the former spouse and the second marriage is much less than seven years. The proposition thus stated was laid down by Shope, J., in *Johnson* v. *Johnson,* 114 Ill. 611 (3 N. E. 232, 55 Am. Rep. 883), in an opinion where numerous cases are considered and reviewed. In *Cash* v. *Cash,* 67 Ark. 278 (54 S. W. 744), the period elapsing between the time the first husband was last heard of and the date of the second marriage was only five years. In *Town of Greensborough* v. *Town of Underhill,* 12 Vt. 604, the period was less than two years. In *Wilkie* v. *Collins,* 48 Miss. 496, the period was a little more than two years. In *Kelly* v. *Drew,* 12 Allen (94 Mass.), 107 (90 Am. Dec. 138), only four years had elapsed from the time that the first husband was last heard of.''

In *Re McCausland's Estate,* 213 Pa. 189 (62 Atl. 780, 110 Am. St. Rep. 540), it was held, quoting syllabus:

''Where a married man disappears and is not heard of for seven years a presumption arises that he is dead, but there is no presumption as to the time when during the seven years his death actually occurred; and if his wife marries within the seven years, and there is no proof of the actual date of the death, the presumption is in favor of legitimacy, and in favor of the validity of the second marriage as not having occurred prior to the death of the absent husband.''

See, also, *Wagoner* v. *Wagoner,* 128 Mich. 635.

The ceremonial marriage between Jesse Osborn and Mattie Stocks, in Georgia in 1915, was valid and, there being no proof of subsequent dissolution thereof and Mattie Osborn living, it continued until the death of Mr. Osborn. Consequently, the claimed

common-law marriage between Jesse Osborn and plaintiff was void, and Mattie Osborn is the widow of Jesse Osborn.

The judgment in the circuit court so holding is affirmed, with costs to defendant.

Potter, C. J., and Toy, North, Fead, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.