BRAYMER v. OVERTON MACHINE COMPANY.

1. WORKMEN'S COMPENSATION — DEATH BENEFITS — COMMON-LAW MARRIAGE.

Person, claiming death benefits under workmen's compensation act as common-law wife of electrocuted employee, must establish her claim by offering prima facie proof of the validity of the claimed common-law marriage.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am. Jur., Workmen's Compensation, § 173.
[1] Common-law wife as dependent within workmen's compensation act. 13 A.L.R. 686, 708; 30 A.L.R. 1253, 1266; 35 A.L.R. 1066, 1075; 39 A.L.R. 313, 319; 53 A.L.R. 218, 226; 62 A.L.R. 160, 170.
[2] 35 Am. Jur., Marriage, § 148.
[2] Validity of common-law marriages in American jurisdictions. 39 A.L.R. 538; 60 A.L.R. 541; 94 A.L.R. 1000; 133 A.L.R. 758.

2. SAME—COMMON-LAW MARRIAGE.

Where previous marriage of plaintiff was undisputed and testimony shows such marriage has not been terminated, her alleged common-law marriage with deceased employee could not support an award of workmen's compensation to her as a dependent since such marriage was not valid.

Appeal from Department of Labor and Industry. Submitted April 5, 1949. (Docket No. 9, Calendar No. 44,235.) Decided May 18, 1949.

Jessie D. Braymer presented her claim against Overton Machine Company, employer, and Michigan Mutual Liability Company, insurer, for compensation for death of husband. Award to plaintiff. Defendants appeal. Reversed.

*Benjamin E. Cueny,* for plaintiff.

*L. J. Carey* and *Geo. J. Cooper,* for defendants.

BUSHNELL, J.   The controlling question in this appeal from an award of the workmen's compensation commission is whether plaintiff, Jessie D. Braymer, was the widow of Leslie L. Braymer on August 21, 1947, the date of his injury and death.

Braymer, then in the employ of the Overton Machine Company, appellant herein, while drilling a hole in a tank, was accidentally electrocuted. He and Jessie had lived together in Dowagiac, Michigan, for about 4 years. She had entered into a marriage ceremony with Richard Suttles at Jerseyville, Illinois, on March 1, 1936, and lived with him for about 4 months in the fall of 1937. She did not live with him immediately after the marriage because he was then in the Army and stationed at Jefferson Barracks, St. Louis. In 1938 or 1939, the exact date of which she could not remember, she commenced action for divorce, which was afterwards discon-

tinued. Later, she began another action of which she said, "I never got it through for lack of evidence." She saw Suttles occasionally and in the fall of 1941 he told her he was getting a divorce. She testified that he did get a divorce and, when pressed as to the source of her knowledge, stated that she saw the information in a newspaper.

She met Braymer in Illinois in July of 1942. About a month later they discussed entering into a common-law marriage and, according to her testimony, on October 23, 1942, they commenced living together and continued to do so in Illinois and in Michigan until Braymer's death. The parties moved to Michigan in June of 1943.

In denying plaintiff's claim for compensation the deputy commissioner found "that plaintiff, Mrs. Jessie D. Braymer, was not the legal widow of Leslie L. Braymer, deceased, on 8/21/47, and that she is not entitled to receive compensation benefits from defendants in this cause."

In their formal denial of liability, defendants had stated:

"That petitioner was not dependent upon the deceased at the time of alleged accidental injury. That petitioner is not the widow of deceased."

Upon review the award of the deputy commissioner was reversed and compensation was granted to plaintiff in the sum of $19 per week for 400 weeks, the commission holding in part as follows:

"Plaintiff and the deceased started living together on October 23, 1942, cohabited and held themselves out as husband and wife from that time until his fatal injury. They came to Dowagiac sometime in the year 1942. They were known in that community as husband and wife. There is an abundance of documentary evidence including individual income

tax returns, income tax withholding receipts, a land contract, a deed to certain real estate and a joint account at the Dowagiac Savings & Loan Association, all indicating that the plaintiff and deceased were husband and wife and holding themselves out to the public as married.

"The evidence clearly establishes that the plaintiff and Leslie Braymer entered into a common-law marriage and lived together for a period of approximately five years.

"It is well settled that there is a strong presumption of law favoring the validity of a subsequent ceremonial marriage as against the presumption which favors the continuance of a prior marriage. The presumption of the legality of the second marriage is not, however, conclusive and may be overcome by competent proof. The party attacking the validity of the second marriage has the burden of showing that the first marriage of either or both the parties has not been legally dissolved and that the former husband or wife is still living. We think the same presumption applies with equal force if the second marriage is a common-law marriage. That opinion is based upon a statement taken by our Supreme Court from the case of *Howard* v. *Kelly,* 111 Miss. 285 (71 South. 391, Ann. Cas. 1918E, 1230) involving a subsequent common-law marriage which is quoted with approval in the case of *May* v. *Meade,* 236 Mich. 109, on page 114, as follows:

" 'We are persuaded that every presumption should then be indulged in favor of the legality of a union thus shown in the same way and to the same extent as the law indulges in favor of a ceremonial marriage.' "

"The above was requoted with approval in the case of *Watts* v. *General Motors Corp.,* 308 Mich. 499, on page 503. If that is the correct principle of the law to be applied to a second marriage, which is a common-law marriage, then it follows that the party attacking the validity of such a marriage has the burden of proving that the prior marriage was

not legally dissolved and that the former husband or wife was still living. Defendants have not sustained that burden in the instant case."

In their brief appellants urge this Court to hold that the commission was in error in stating that the burden of proof imposed upon them had not been met on the theory that when any proof is offered to negative the presumption of marriage the presumption immediately falls, citing *Patt* v. *Dilley,* 273 Mich. 601; *Klat* v. *Chrysler Corp.,* 285 Mich. 241; and *Bradford* v. *Goldman,* 290 Mich. 338. Appellants also suggest that the common-law marriage could not have been consummated in Illinois because, since 1905, such marriages have been prohibited by the statutes of that State. See *Grammas* v. *Kettle,* 306 Mich. 308, and Illinois Rev. Stat. 1941, chap. 89, § 4. It is also argued that no valid common-law marriage was consummated in Michigan because the parties failed in one of the essential elements—the present taking of each other as husband and wife. Appellants further desire a determination of the applicability to common-law marriages of Act No. 207, Pub. Acts 1937, as amended (3 Comp. Laws 1948, § 551.151 *et seq.* [Comp. Laws Supp. 1940, § 12704–1 *et seq.,* Stat. Ann. 1947 Cum. Supp. § 25.-25 *et seq.*]), which requires persons applying for a "license to marry" to furnish a medical certificate.

It is unnecessary to discuss some of these propositions. In order for plaintiff to establish her claim she must at least offer prima facie proof of the validity of the claimed common-law marriage.

Assuming in this instance that plaintiff made a prima facie case of the existence of a common-law marriage, it follows that a presumption of its validity was established, and that the burden then shifted to defendants to prove either that she had previously been married or that she had previously

been married and that that marriage had not been dissolved. See *May* v. *Meade,* 236 Mich. 109; *Hess* v. *Pettigrew,* 261 Mich. 618; *Watts* v. *General Motors Corp.,* 308 Mich. 499; and *Jones* v. *General Motors Corp.,* 310 Mich. 605.

In the light of this record it is unnecessary for us to determine the exact extent of defendants' burden, because plaintiff's previous marriage was undisputed, and the testimony shows that this marriage had not been terminated.

Plaintiff, when questioned on cross-examination with respect to the steps she had taken to determine whether or not her former marriage had been dissolved, stated that she had attempted to locate Suttles but did not succeed; she had never received any papers regarding the claimed divorce proceedings and never had seen a decree of divorce. Thus any presumption she may have established by her direct testimony was overcome by her admission on cross-examination. As a matter of law, there remained no testimony to support this award, as based on a common-law marriage.

The award is vacated, with costs to appellants.

BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred with BUSHNELL, J.

SHARPE, C. J., and DETHMERS, J., concurred in the result.