*In re* LEONARD ESTATE

MAGWOOD v CLARK

1. MARRIAGE—COMMON-LAW MARRIAGE—EVIDENCE.

A valid common-law marriage must have been contracted before 1957 and requires a present agreement to live together as husband and wife made by persons who are free to marry, and their subsequent open cohabitation as husband and wife.

2. MARRIAGE—COMMON-LAW MARRIAGE—BURDEN OF PROOF—PRESUMPTIONS.

The party who asserts a common-law marriage bears the burden of proving the marriage by clear and convincing evidence, but once he makes out his prima facie case, the burden is upon the party attacking the validity of the marriage to show that the marriage is invalid; and once established, the presumption of the validity of a marriage including a common-law marriage is one of the strongest known in the law and compelling evidence is necessary to overturn this presumption.

3. MARRIAGE—PRESUMPTIONS—BURDEN OF PROOF.

The presumption of the validity of a second marriage arises because the law presumes morality of the parties and that parties to a marriage are not bigamists or their children bastards, and that presumption predominates over the presumption favoring the continuance of a prior marriage.

4. MARRIAGE—COMMON-LAW MARRIAGE—PROOFS.

There was a failure to establish a second common-law marriage because a bald assertion that the woman's husband was dead was not sufficient of itself to show that the woman was free to marry and the man's claim that he was a widower was not sufficient to show his freedom to marry, where both of the prior marriages were undisputed and no competent evidence was ever offered to show that either was terminated.

REFERENCES FOR POINTS IN HEADNOTES
[1] 52 Am Jur 2d, Marriage §§ 47–52, 163.
[2, 3] 52 Am Jur 2d, Marriage §§ 133, 134
[4] 52 Am Jur 2d, Marriage §§ 47, 140 *et seq.*

Appeal from Wayne, Michael L. Stacey, J. Submitted Division 1 January 11, 1973, at Detroit. (Docket No. 13417.) Decided March 27, 1973.

Edward Magwood, plaintiff, petitioned in probate court for an order determining heirs of Lillie B. Leonard. John F. Clark, defendant, was declared the common-law widower of the deceased. Plaintiff appealed to circuit court. Affirmed. Plaintiff appeals by leave granted. Reversed and remanded to probate court.

*Cassese & Krolick,* for plaintiff.

*Samuel T. Berkley,* for defendant.

Before: LESINSKI, C. J., and T. M. BURNS and O'HARA,* JJ.

LESINSKI, C. J. Lillie Belle Leonard died intestate on March 14, 1969. Plaintiff Edward Magwood is her brother and heir. The defendant John Edward Clark claims to be her common-law widower.[1] The Wayne County Probate Court entered an order determining heirs in December, 1970, concluding that John Edward Clark had been the common-law husband of the deceased. Mr. Magwood appealed to the Wayne County Circuit Court. There the case was heard *de novo* without a jury and the probate decision was affirmed. We granted leave to appeal June 19, 1972.

At the outset, we regard it as a well-settled rule that this Court will not substitute its own judg-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] As the marriage was alleged to have been entered into by the parties in 1941, the marriage would be valid notwithstanding MCLA 551.2; MSA 25.2, which bars contracting common-law marriages after January 1, 1957.

ment on factual questions in a nonjury case for that of the trial court unless the facts clearly indicate that an opposite result must be reached. *Bradshaw v Blaine,* 1 Mich App 50 (1965); *Tait v Ross,* 37 Mich App 205 (1971). On the facts present in the case before us, the judgment of the lower courts must be reversed.

A valid common-law marriage requires the present agreement to live together as husband and wife made by persons who are free to marry, and their subsequent open cohabitation together as husband and wife. *People v Spencer,* 199 Mich 395, 402–403 (1917).

Evidence offered to prove a common-law marriage must be clear and convincing. The party who asserts the marriage bears this burden. *Westfall v J P Burroughs & Son,* 280 Mich 638 (1937). Once the proponent of such marriage makes out his prima facie case, the burden is upon the party attacking its validity to show that the marriage is invalid. *In re Estate of Osborn,* 273 Mich 589 (1935). Once established, the presumption of the validity of a marriage, including a common-law marriage, is one of the strongest known in the law. Compelling evidence is necessary to overturn this presumption. *Watts v General Motors Corp,* 308 Mich 499 (1944).

Here, evidence was introduced showing that the deceased had first been married in the State of Alabama in April, 1922, to John L. Bullard; that they had parted without having children; and that the deceased began living with Mr. Clark in about 1941. There was also evidence that Mr. Clark had formerly been married. No evidence was introduced to show that either marriage had been dissolved by divorce or death.

We are faced with conflicting presumptions.

First, the presumption that once entered, the marriage continues until ended by death or divorce. *Doertch v Folwell Engineering Co,* 252 Mich 76 (1930). Second, that a second marriage, once established, is presumed valid. *Watts, supra.* It is said that the presumption of validity which attaches to a second marriage arises because the law presumes morality of the parties, and also that parties to the marriage are not bigamists or their children bastards. *May v Meade,* 236 Mich 109 (1926); *Killackey v Killackey,* 156 Mich 127 (1909). The presumption of the validity of a second marriage, if the marriage is proved, predominates over the presumption favoring the continuance of a prior marriage. *Weinert v Tallman,* 346 Mich 388 (1956).[2]

But Mr. Clark is not entitled to the presumptions flowing from an established second marriage. His proofs failed to establish that there was a common-law marriage between himself and the deceased. The bald assertion that John L. Bullard was dead is not sufficient of itself to show that Lillie Belle Leonard was free to marry, nor was Clark's claim that he was a widower sufficient to show his freedom to marry.

The case of *In re Estate of Osborn, supra,* involved a similar issue. In 1909 Mattie Stocks married Joe Stocks in the State of Georgia. He deserted her and was never heard from again. Mattie then married Jesse Osborn in a ceremony in July, 1915. He too deserted her, moving to Ohio and then to Detroit where he died in March, 1934. Gertrude Osborn claimed a common-law marriage,

---

[2] *See* Annotations at 14 ALR2d 7, *Presumption as to validity of second marriage;* 144 ALR 747, *Validity of marriage celebrated while spouse by former marriage of one of the parties was living and undivorced, in reliance upon presumption from lapse of time of death of such spouse;* 93 ALR 345, same title.

beginning in 1922, which lasted until Jesse Osborn's death. The Court said at pages 593–594:

"The ceremonial marriage between Jesse Osborn and Mattie Stocks, in Georgia in 1915, was valid and, there being no proof of subsequent dissolution thereof and Mattie Osborn living, it continued until the death of Mr. Osborn. Consequently, the claimed common-law marriage between Jesse Osborn and plaintiff was void, and Mattie Osborn is the widow of Jesse Osborn."

Similarly, in the case of *Crockett v Consolidated Paper Co,* 281 Mich 571 (1937), the plaintiff claimed to be the common-law wife of a workman employed by the defendant. Plaintiff had been married to a Mr. Willis in the State of Georgia. She left him and moved to Michigan to live with the deceased. At the time of the workman's death in Michigan, no decree of divorce had been entered in the Georgia court.

"No decree of divorce having been entered in the Georgia court until after the death of Mr. Crockett, the entry of it then, *nunc pro tunc,* could not validate the claimed common-law marriage." *Crockett,* at p 573.

In *Braymer v Overton Machine Co,* 324 Mich 648, 652–653 (1949), a workman's common-law wife sought compensation when her "husband" was killed in an industrial accident. The Court there stated:

"In order for plaintiff to establish her claim she must at least offer prima facie proof of the validity of the claimed common-law marriage.

"Assuming in this instance that plaintiff made a prima facie case of the existence of a common-law marriage, it follows that a presumption of its validity was established, and that the burden then shifted to defendants to prove either that she had previously been married or that she had previously been married and

that that marriage had not been dissolved. See *May v Meade*, 236 Mich 109 [1926]; *Hess v Pettigrew*, 261 Mich 618 [1933]; *Watts v General Motors Corp*, 308 Mich 499 [1944]; and *Jones v General Motors Corp*, 310 Mich 605 [1945].

"In the light of this record it is unnecessary for us to determine the exact extent of defendants' burden, because plaintiff's previous marriage was undisputed, and the testimony shows that this marriage had not been terminated."

Here too we do not go into the proofs requisite on the part of those who oppose the defendant's contention that there was a common-law marriage. Both of the prior marriages of Lillie Belle Leonard and Mr. Clark are undisputed and no competent evidence was ever offered to show either was terminated.

Furthermore, the evidence presented is insufficient to substantiate a finding that the parties lived together and held themselves out to the world as husband and wife. In nine different job applications John Clark represented to employers that he was a single man, ostensibly, he claims, to avoid racial prejudice. We are sympathetic to this reasoning. However, when filing for social security in 1963 he gave his status as a single widower. When he was hospitalized he gave his status as being single. Numerous letters written by Lillie Belle Leonard to a niece in Ohio during the claimed marriage were signed with the name Leonard. She went by the name of Leonard in the community most of the time. In 1947 real property was purchased in her name. At the time of her death, the name given by the family, with Mr. Clark and witness Thomas present, was Lillie Belle Leonard. At the same time information was given to complete the death certificate that she was a single woman. (By contrast, see *In re Kachu-*

*la's Estate,* 324 Mich 725 [1949], where the Court sustained the marriage.)

It is not sufficient to hold out to part of the community that one is married and to others in the same community that one is not. The law in this situation does not allow the parties to wear two hats. *Lockwood v Lockwood,* 220 Mich 124, 127 (1922).

Our courts have long held that notoriety is a most important element necessary to establish a common-law marriage. Where one party has seen it advantageous to use another name for whatever reason, the claim of common-law marriage has universally been turned down. *Crockett, supra* (parties desired to avoid publicity that they were married); *Burns v Stevens,* 236 Mich 443 (1926) ("wife" used her maiden name in contracts, on receipts and in the phone book); *Hannigan v Hannigan,* 328 Mich 378 (1950) ("wife" filed legal papers stating that the parties were formerly husband and wife); *Lockwood, supra* ("wife" continued to apply for veteran's benefits using her former husband's name).

We find for these reasons that no common-law marriage existed between John Edward Clark and the deceased. The circuit and probate orders are reversed and the case is remanded to the Probate Court for settlement accordingly.

Reversed and remanded. Costs to plaintiff.

All concurred.