CROCKETT v. CONSOLIDATED PAPER CO.

1. MARRIAGE—COMMON LAW—DIVORCE.

No decree of divorce in suit of husband having been entered at time of death of man with whom plaintiff was living, subsequent entry *nunc pro tunc* could not validate claimed common-law marriage.

2. SAME—COMMON LAW—PUBLICITY—EVIDENCE.

Testimony that woman, upon learning that her husband had divorced her in another State, desired to avoid publicity incident to ceremonial marriage to man with whom she had been living for many years in an illicit relation *held,* to militate against her assertion of a valid common-law marriage to such man since a common-law marriage requires publicity of the fact.

3. WORKMEN'S COMPENSATION—MARRIAGE—EVIDENCE.

Finding of department of labor and industry that plaintiff was not the common-law widow of deceased employee who suffered an accidental death *held,* supported by record.

Appeal from Department of Labor and Industry. Submitted June 10, 1937. (Docket No. 64, Calendar No. 38,991.)   Decided October 4, 1937.

Margaret Crockett presented her claim against Consolidated Paper Company for compensation for death of her alleged husband. Award to defendant. Plaintiff appeals.   Affirmed.

*Lester L. Johnson* (*LeRoy J. Abt* and *Robert J. Hanley,* of counsel), for plaintiff.

*Thomas P. Thornton* (*Golden & Fallon,* of counsel), for defendant.

WIEST, J. Claiming to be the common-law widow of Henry Crockett, an employee of defendant company, who met his death on December 24, 1933, in an accident arising out of and in the course of his employment, plaintiff applied for dependency compensation. The department was unable to find the relationship claimed and denied compensation. On the date mentioned the employee was beheaded in an elevator accident.

Plaintiff was born in South Carolina in 1904, where she was married at the age of 16 years, to Robert Clyde Willis, and bore him three children. After living with Willis for 8 or 10 years she left him and came to Michigan and, without a divorce from her husband, went to live with Mr. Crockett in an illicit relation, passing themselves as husband and wife. In August, 1933, plaintiff claims that her mother sent her a letter, written by her aunt, stating that Willis had procured a divorce in Georgia and she informed Mr. Crockett of the information and, when asked why a ceremonial marriage was not then had, testified:

"Well, we had been living together that long just as man and wife, and nobody knew the difference. All our friends recognized us as man and wife, and I had my son here, and it would have been published in the paper and everything else, and we didn't want the publicity, that's all, and we understood between us that there was no need for a ceremony, either. * * *

"Well, he (Crockett) says, 'Margaret, you are just as much my wife as if we had went out and had a dozen preachers to marry us', and he said 'What's the idea? There's no sense to it, anyway', he said, 'We are just as much married as anybody else.' He said 'You are my wife and I am your husband.' "

At the time of the death of Mr. Crockett no decree of divorce had been entered in the Georgia court but, on April 28, 1934, the costs then having been paid, the court entered a decree of divorce, *nunc pro tunc,* probably as of July 17, 1933, as that was the date of the second verdict rendered.

No decree of divorce having been entered in the Georgia court until after the death of Mr. Crockett, the entry of it then, *nunc pro tunc,* could not validate the claimed common-law marriage.

The publicity claimant said she desired to avoid in announcing marriage after she heard of the divorce granted her husband militates against her assertion of a common-law marriage. The law relative to common-law marriage requires publicity of the fact and it is fair to assume that the parties were content to allow the relation, formerly illicit, to continue.

The record justifies the department in holding that plaintiff failed to establish a common-law marriage but rather that—"The relationship between plaintiff and deceased was admittedly illicit in its commencement and there is no substantial testimony to show that that relation ever changed."

The finding of the department is affirmed, with costs to defendant.

FEAD, C. J., and NORTH, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.