STEVENSON v DETROIT

MARRIAGE—WIDOW—RETIREMENT BENEFITS.

> A woman who marries a man in good faith unaware that he has a prior undissolved marriage and who lives with him as his wife until his death is his "widow" within the meaning of that term as used in a municipal employer's retirement plan established in the city charter where the prior marriage was in fact dissolved before the husband's death and the contest for survivor's retirement benefits is between the woman claiming to be the widow and a beneficiary named by the deceased husband who was not dependent on him (Detroit Charter, Title 9, ch 6, art 6, part E, § 2).

Appeal from Wayne, Neal Fitzgerald, J. Submitted Division 1 March 9, 1972, at Detroit. (Docket No. 12754.) Decided July 31, 1972. Leave to appeal denied, 388 Mich 787.

Complaint by Hilliard Stevenson against the City of Detroit and Ila C. Stevenson to compel the City of Detroit to pay to him, as named contingent beneficiary, survivor's benefits after the death of his brother, a city employee. Cross-complaint by Ila Stevenson, as decedent's widow, for benefits. Judgment for plaintiff. Defendant Ila Stevenson appeals. Reversed and remanded with instructions.

*Eddie D. Smith,* for plaintiff.

*George C. Parzen (Maxwell I. Silverstein,* of counsel), for defendant Stevenson.

REFERENCE FOR POINTS IN HEADNOTE
60 Am Jur 2d, Pensions and Retirement Funds §§ 45, 46, 51, 59.

Before: LEVIN, P. J., and V. J. BRENNAN and VAN VALKENBURG,* JJ.

LEVIN, P. J. The meritorious question is whether Ila C. Stevenson, the cross-plaintiff and appellant, is the "widow" of William Stevenson within the meaning of that term as used in the chapter of the charter of the City of Detroit concerning the city's general retirement system.[1]

William Stevenson married another woman, Minnie, on July 19, 1951. That marriage was dissolved on July 8, 1968, by the entry of a judgment of divorce.

Before the divorce, Stevenson entered into a marriage ceremony with Ila on November 1, 1967. Stevenson had commenced an action for divorce against Minnie on July 22, 1967, before he married Ila.

Stevenson lived with Ila until his death on July 15, 1969, and supported her. Two children were born of this union.

Stevenson was employed by the City of Detroit. He had designated his mother, who predeceased him, as the beneficiary, and his brother, the plaintiff-appellee Hilliard Stevenson, who survived him, as the contingent beneficiary, of the survivor benefits payable under Detroit's general retirement system. Detroit's charter provides, however, that the widow of an employee is entitled, in preference to any named beneficiary or contingent beneficiary, to all survivor benefits payable upon and after the employee's death.

Stevenson's brother contended successfully before the trial court that although Stevenson had

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Detroit Charter, Title 9, ch 6, art 6, part E, § 2.

entered into a marriage ceremony with Ila, who it appears thought in good faith that he was free to marry her,[2] and lived with her until his death and fathered children by her, she was not his widow because his former marriage to Minnie was not dissolved until after the marriage ceremony and he had not entered into a second marriage ceremony with Ila after the divorce.

The general rule is, indeed, that a marriage contracted while one of the parties is still married to another person is invalid, and the termination of the earlier marriage after the second marriage does not validate the second marriage; in order to validate the second marriage, the parties must, after the dissolution of the earlier marriage, go through another marriage ceremony or, in jurisdictions where common-law marriage is recognized, validate the second marriage in accordance with the requirements of the common law.[3]

Last year, in *Dawson v Hatfield Wire & Cable Co,* 59 NJ 190; 280 A2d 173 (1971), the Supreme Court of New Jersey was confronted with a factual situation paralleling this case. Plaintiff Mamie Dawson, claiming that she was entitled to workmen's compensation benefits as the result of her husband's death in 1965, filed a petition seeking benefits. The issue was whether she was the "wife" of the deceased workman.

The employer proved that the workman had

---

[2] William Stevenson had a series of alliances with a number of different women and fathered many children. There is nothing in the record, however, to show that he lived with another woman after he entered into a marriage ceremony with Ila. There is no evidence that Ila was aware before she married William Stevenson that he had a former undissolved marriage.

[3] See *Jones v George R Cooke Co,* 250 Mich 460 (1930); *Hess v Pettigrew,* 261 Mich 618 (1933); *Beaudin v Suarez,* 365 Mich 534 (1962) (plaintiff successfully sought an annulment of the second marriage); 52 Am Jur 2d, Marriage, § 69, p 921.

married another woman in 1942, and they had not been divorced before he married Mamie in 1949. There were two children born of the first marriage, none of the second. The first wife had since borne two additional children by another man. The workman had entered into a ceremonial marriage with claimant Mamie, and lived with her as husband and wife until his death. She was unaware of his former marriage.

In holding that Mamie was the deceased's workman's wife, the New Jersey Supreme Court reasoned (pp 195–196):

"Initially it must be noted that petitioner, Mamie Dawson, entered upon her relationship with Willie in entire good faith. There is no evidence in the record to suggest that she had any suspicion, let alone knowledge, that Willie had ever been previously married. Her *bona fides* is unquestioned. In upholding awards under similar circumstances, courts in other states have placed strong reliance upon the good faith of a claimant when her legal relationship to the deceased employee has been questioned.

\* \* \*

"Furthermore, from the time of their marriage in 1949 until her husband's death in 1965, Mamie and Willie lived together as husband and wife.

\* \* \*

"That Mamie was in fact dependent upon the decedent for economic support has not been controverted.

"Finally, we deem it significant that petitioner and decedent entered upon a *ceremonial* marriage, carrying with it, as all ceremonial marriages do in varying degree, elements of solemnity, publicity and prior deliberation not generally characteristic of a common law union.

"Thus, we have here, entire good faith on the part of petitioner, a *de facto* relationship of man and wife continuing unbroken over an extended period of years having had its genesis in a ceremonial marriage, eco-

nomic dependence on the part of petitioner and the total absence of any other claim against respondent. Where such facts coalesce, we think that the petitioner qualifies as a 'wife' under the statute. We leave for another day the question as to who should recover benefits in the event of a dispute between the wife of a first marriage and the wife of a purported second marriage. This issue is not before us."

Similarly, see *Perry v Sun Coal Co,* 183 Tenn 141; 191 SW2d 181 (1945).

The Michigan case law is not in opposition to the approach taken by the New Jersey Supreme Court in the *Dawson* case. When common-law marriage was recognized in this state, the second marriage could become valid in accordance with the common-law conventions after the impediment of the earlier marriage was removed.[4] In a number of our cases the strong presumption that a ceremonial marriage is valid and an earlier marriage was dissolved, made it unnecessary to consider the issue now before us.[5] In other cases the prior marriage was not terminated before the death of the bigamous husband; the contests were between competing wives[6]—here only one woman, Ila, claims to be Stevenson's widow. In *Crockett v Consolidated Paper Co,* 281 Mich 571 (1937), it was the claimant who had been sloppy about obtaining a divorce before marrying again,[7] not a woman

---

[4] *Shane v Hackney,* 341 Mich 91, 95 (1954); *Hess v Pettigrew, supra,* p 622.

[5] See *Doertch v Folwell Engineering Co,* 252 Mich 76, 78 (1930); *Mogk v Stroecker,* 243 Mich 668, 671 (1928); *May v Meade,* 236 Mich 109, 113 (1926); *In re Adams Estate,* 362 Mich 624 (1961).

[6] See *Jones v George R Cooke Co, supra; In re Estate of Osborn,* 273 Mich 589 (1935); *Watts v General Motors Corp,* 308 Mich 499 (1944).

[7] Similarly, see *Braymer v Overton Machine Co,* 324 Mich 648 (1949).

The opinion in the *Crockett* case is not entirely clear; it is arguable that the Court based its conclusion deciding against the claimant on the alternative ground that the claimant had not shown that she ever

like Ila who entered into the second marriage in good faith unaware that there was a prior undissolved marriage. Also in *Crockett* the defendant's liability arose only if the husband left a widow—while here the city must pay someone, either Stevenson's brother or the woman Stevenson purported to marry.

We adopt the reasoning of *Dawson v Hatfield Wire & Cable Co, supra.* Where the prior marriage is in fact dissolved before the errant spouse's death, in a contest between a beneficiary named by an employee and a woman claiming to be his widow—who married him in good faith unaware that he had a prior undissolved marriage and who lived with him as his wife until his death—the woman who married him is a widow within the meaning of a provision such as the one we here construe. Ila Stevenson is entitled to the survival benefits provided in Detroit's charter in preference to Stevenson's brother.

Manifestly, the purpose of providing preferential treatment for a widow over a named beneficiary or contingent beneficiary is to provide for those dependent on the deceased employee. Clearly Ila (and her children), not Stevenson's brother, is the person contemplated by that policy. See *Perry v Sun Coal Co, supra.*[8]

---

complied with the requirements of the common law necessary to establish the claimed second marriage.

[8] Plaintiff contends that the marriage between Ila and William Stevenson was void for the additional reason that the marriage ceremony was not performed within 30 days after the issuance of the marriage license as required by the statute. MCLA 551.103a; MSA 25.34. Although the date on the original return of the marriage license bears out this contention, there was uncontradicted testimony that the ceremony had in fact taken place within the 30-day period. An order was entered on December 12, 1969 by the circuit court correcting the date.

In all events, since Ila Stevenson recovers on grounds not dependent on the validity of her marriage to William Stevenson, we see no need to consider this contention. The issue, as we see it, is not

Reversed and remanded for entry of a judgment consistent with this opinion. Costs to the cross-plaintiff.

All concurred.

whether Ila's marriage to William Stevenson was valid. Under established precedent, it was not. The issue is whether Ila was, nevertheless, his widow within the meaning of the mentioned provision of Detroit's charter.