Katherine A. **LAWSON,**
Plaintiff-Appellant,
v.
Margaret A. **HECKLER, Secretary of Health and Human Services,**
Defendant-Appellee.
No. 83–1286.

United States Court of Appeals,
Sixth Circuit.

Submitted June 12, 1985.

Decided Aug. 29, 1985.

John I. Tsiros, Van Benschoten, Hurlburt and Van Benschoten, Saginaw, Mich., for plaintiff-appellant.

Joel M. Shere, U.S. Atty., Detroit, Mich., Michael Hluchaniuk, Asst. U.S. Atty., Bay City, Mich., for defendant-appellee.

Before MILBURN, Circuit Judge, EDWARDS and BROWN, Senior Circuit Judges.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.

Appellant Katherine Lawson filed an application for mother's insurance benefits under 42 U.S.C. § 402(g) following the death of the insured, Ronald Lawson. After denials at the Administrative level, claimant appealed to the District Court which, on recommendation of an Administrative Law Judge, granted summary judgment for the Secretary and dismissed appellant's complaint.

In this appeal we search for facts in murky waters of disordered lives. There are, however, at least six undisputed facts. 1) The record in this case includes a certificate of marriage which establishes that appellant went through a marriage ceremony with Ronald Lawson on March 8, 1971. 2) This was, however, well before Ronald Lawson was, on December 15, 1972, divorced from a previous wife, Donna Lawson. 3) Appellant bore and has had care and custody of a child, Erihk, fathered by Ronald Lawson from its birth March 25, 1971 to the closing of this record. 4) Appellant was living with and caring for Erihk and Ronald Lawson up to and including Ronald Lawson's trip to the hospital where he died. 5) Erihk has been and is still receiving child's benefits from the Department of Health and Human Services. 6) Appellant testified that she did not know that Ronald Lawson had a pre-existing marriage from which he was not divorced when she went through the March 1971 marriage ceremony with Lawson.

We base our decision herein on our consideration of these facts and those facts set forth in greater detail in the Appendix to this opinion. We turn now to the legal arguments advanced in this case.

The Administrative Law Judge who heard this case held as follows: "Under Michigan law, the courts would hold that Katherine Lawson is not the widow of Ronald J. Lawson because of legal impediment, that is the prior undissolved marriage to Donna." This holding may be consistent with M.C.L. § 551.2, Michigan Statute Annotated § 25.2, which abolished Michigan's previous recognition of common law marriage by consent and which reads as follows:

**551.2 Marriage, status as a civil contract, necessity of consent, license and solemnization**

Sec. 2. Marriage, so far as its validity in law is concerned, is a civil contract, to which the consent of parties capable in law of contracting, is essential. Consent alone will not be enough to effectuate a legal marriage from and after January 1, 1957. Consent must be followed by the issuance of a license as provided for by section 1 of Act. No. 128 of the Public Acts of 1887, as amended, being section 551.101 of the Compiled Laws of 1948, or as provided for by section 1 of Act No. 180 of the Public Acts of 1897, as amended, being section 551.201 of the Compiled Laws of 1948, and solemnization, as authorized by sections 7 to 18, inclusive, of this act.

This statute at least casts doubt on whether Michigan would recognize claimant's marriage.[1]

Michigan law is not, however, the controlling law of this case.

The controlling law is set forth in federal statutes and regulations as appear below:

(g) Mother's and father's insurance benefits

(1) The surviving spouse and every surviving divorced parent (as defined in section 416(d) of this title) of an individual who died a fully or currently insured

1. *But see Stevenson v. City of Detroit,* 42 Mich. App. 294, 201 N.W.2d 688 (1972) (In dispute over award of survivor's benefits from city retirement system, court awarded benefits to the deceased's putative wife, even though deceased employee had an undissolved prior marriage at time he entered marriage ceremony with putative wife claimant. Note that dispute there was between the deceased's brother and the deceased's putative wife and mother of his child.).

individual, if such surviving spouse or surviving divorced parent—

(A) is not married.

(B) is not entitled to a surviving spouse's insurance benefit.

(C) is not entitled to old-age insurance benefits, or is entitled to old-age insurance benefits each of which is less than three-fourths of the primary insurance amount of such individual.

(D) has filed application for mother's or father's insurance benefits, or was entitled to a spouse's insurance benefit on the basis of the wages and self-employment income of such individual for the month preceding the month in which such individual died.

(E) at the time of filing such application has in his or her care a child of such individual entitled to a child's insurance benefit, and

(F) in the case of a surviving divorced parent—

(i) the child referred to in subparagraph (E) is his or her son, daughter, or legally adopted child, and

(ii) the benefits referred to in such subparagraph are payable on the basis of such individual's wages and self-employment income, shall (subject to subsection (s) of this section) be entitled to a mother's or father's insurance benefit for each month, beginning with the first month in which he or she becomes so entitled to such insurance benefits and ending with the month preceding the first month in which any of the following occurs: no child of such deceased individual is entitled to a child's insurance benefit, such surviving spouse or surviving divorced parent becomes entitled to an old-age insurance benefit equal to or exceeding three-fourths of the primary insurance amount of such deceased individual, he or she becomes entitled to a surviving spouse's insurance benefit, he or she remarries, or he or she dies. Entitlement to such benefits shall also end, in the case of a surviving divorced parent, with the month immediately preceding the first month in which no son, daughter, or legally adopted child of such surviving divorced parent is entitled to a child's insurance benefit on the basis of the wages and self-employment income of such deceased individual.

\*     \*     \*     \*     \*     \*

42 U.S.C. § 402(g) (1982).

The statute is entitled "Mother's insurance and father's insurance benefits." It provides benefits to "the surviving spouse" of "an individual who died a fully or currently insured individual" subject to five conditions, all of which appellant appears to meet. The critical question is whether she is "the surviving spouse" of Ronald Lawson. As to this question we have to turn to the applicable regulations.

Eligibility for mother's insurance benefits under 42 U.S.C. § 402(g) is further determined according to the following regulations found in 20 C.F.R.:

### § 404.339   Who is entitled to mother's or father's benefits.

You may be entitled as the widow or widower to mother's or father's benefits on the earnings record of someone who was fully or currently insured when he or she died. You are entitled to these benefits if—

(a) You are the widow or widower of the insured and meet the conditions described in § 404.335(a)(1);

(b) You apply for these benefits; or you were entitled to wife's benefits for the month before the insured died;

(c) You are unmarried;

(d) You are not entitled to widow's or widower's benefits, or to an old-age benefit that is equal to or larger than the full mother's or father's benefit; and

(e) You have "in your care" the insured's child who is entitled to child's benefits and he or she is under 16 years old or is disabled. Sections 404.348 and 404.349 describe when a child is "in your care."

**§ 404.344 Your relationship by marriage to the insured.**

You may be eligible for benefits if you are related to the insured person as a wife, husband, widow, or widower. To decide your relationship to the insured, we look first to State laws. The State laws that we use are discussed in § 404.-345. If your relationship cannot be established under State law, you may still be eligible for benefits if your relationship as the insured's wife, husband, widow, or widower is based upon a "deemed valid marriage" as described in § 404.-346.

**§ 404.345 Your relationship as wife, husband, widow, or widower under State law.**

To decide your relationship as the insured's wife or husband, we look to the laws of the State where the insured had a permanent home when you applied for wife's or husband's benefits. To decide your relationship as the insured's widow or widower, we look to the laws of the State where the insured had a permanent home when he or she died. If the insured's permanent home is not or was not in one of the 50 States, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, or American Samoa, we look to the laws of the District of Columbia. For a definition of permanent home, see § 404.303. If you and the insured were validly married under State law at the time you apply for wife's or husband's benefits or at the time the insured died if you apply for widow's, widower's, mother's, or father's benefits, the relationship requirement will be met. The relationship requirement will also be met if under State law you would be able to inherit a wife's, husband's, widow's, or widower's share of the insured's personal property if he or she were to die without leaving a will.

**§ 404.346 Your relationship as wife, husband, widow or widower based upon a deemed valid marriage.**

(a) *General. If your relationship as the insured's wife, husband, widow, or widower cannot be established under State law as explained in § 404.345, you may be eligible for benefits based upon a deemed valid marriage. You will be deemed to be the wife, husband, widow, or widower of the insured if, in good faith, you went through a marriage ceremony with the insured that would have resulted in a valid marriage except for a legal impediment. A legal impediment includes only an impediment which results because a previous marriage had not ended at the time of the ceremony or because there was a defect in the procedure followed in connection with the intended marriage.* For example, a defect in the procedure may be found where a marriage was performed through a religious ceremony in a country that requires a civil ceremony for a valid marriage. *Good faith means that at the time of the ceremony you did not know that a legal impediment existed, or if you did know, you thought that it would not prevent a valid marriage.*

(b) *Entitlement based upon a deemed valid marriage. To be entitled to benefits as the result of a deemed valid marriage, you and the insured must have been living in the same household (see § 404.347) at the time the insured died or, if the insured is living, at the time you apply for benefits.* You may not be entitled to benefits as the result of a deemed valid marriage if, at the time you apply, another person is or has been entitled to benefits as the wife, husband, widow, or widower of the insured and this person is a wife, husband, widow, or widower under State law as explained in § 404.345. If this person loses his or her status as a wife, husband, widow or widower under State law you may become entitled to benefits. Also, if after your entitlement, we find that another person is the wife, husband, widow, or widower of the insured under State law as explained in § 404.345, your entitlement will end with the month before the month in which this determination is made.

(Emphasis added).

These regulations are obviously designed to provide maternal care and sustenance

for the child of a fully insured male wage earner such as Ronald Lawson—even if the marital relationship would, as here, either possibly or probably be held void under applicable state law. There would be no need for "deeming" if the marriage had no arguable defect.

When the ALJ and the District Court held Katherine Lawson disqualified for parent's benefits, it appears to this court that they ignored the undisputed facts that Katherine Lawson and the insured went through a marriage ceremony, that thereafter she performed as a wife in caring for the insured during his last illness, and that she has had the care and custody of Erihk, Ronald Lawson's child, from his birth to the close of this record. Our review of this record does not reveal any evidence which shows that appellant knew of the fact that Ronald Lawson was still married to Donna at the time he married appellant.

For these reasons we hold that the denial of mother's benefits by the Secretary and the District Court on grounds of lack of good faith is not supported by substantial evidence and we reverse and remand the case to the District Court to remand to the Secretary of Health and Human Services for an award of parental benefits.

## APPENDIX

Appellant met Ronald Lawson in 1969 while both of them were working at a K–Mart store. According to appellant, Ronald represented himself as being divorced and on occasion referred to his "ex-wife." The statement of Carol Rathburn, also a K–Mart employee, corroborates appellant's contention that Ronald described himself as divorced at the time he met appellant. Tr. 114–115. Appellant and Ronald began dating in early 1970. In June of that year, they began living together in a house they shared with a couple identified only as Paul and Hazel. Appellant soon became pregnant with Ronald's child.

On March 8, 1971, appellant and Ronald were married in a ceremony witnessed by Patrick Lawson and Kathleen Kalisiak, brother and sister of Ronald. In statements introduced at the ALJ hearing, both Kathleen Kalisiak and Regina Kalisiak, mother of Ronald Lawson, testified that at the time of the March 8, 1971 ceremony, appellant had been told that Ronald's previous marriage was dissolved and appellant had no reason to believe otherwise.

On March 25, 1971, appellant gave birth to Ronald Lawson's son, Erihk.* Shortly after Erihk's birth, appellant, Ronald, and Erihk moved into a house occupied by Ronald's first wife, Donna, and five children (four of which Ronald claimed as his own). According to appellant, this move was precipitated by increased rent at the previous dwelling and by Ronald's desire to care for his children from his first marriage to Donna. Both appellant and Carol Rathburn, through her statement, testified that appellant and Ronald continued to sleep together in one room, while Donna slept with one of her children in a separate room.

The record shows that Ronald Lawson was granted an absolute divorce from Donna on December 15, 1972. The divorce certificate states that Ronald and Donna were separated on August 15, 1971. Tr. 73. Appellant testified that she did not learn that Ronald was still married to Donna until November of 1972, shortly before the divorce was granted. In this respect, appellant's testimony at the ALJ hearing differs from her prior statement on her application for benefits in December 1977, where she stated:

> I realize that Ronald Lawson was married previously to me [sic]. I found out about this fact through my mother-in-law this year [1977].

Tr. 90.

Peter Reaume and Robert Barton, friends of Ronald Lawson, have filed affidavits stating that Ronald was a very de-

---

* Appellant filed an application for child's insurance benefits on behalf of Erihk. That application was approved.

ceitful person who conspired with Reaume and Barton to keep appellant from learning that Ronald's marriage to Donna had not been dissolved prior to his marriage to appellant. Tr. 116–117, 118–120.

The only testimony in the record which casts any shadow on appellant's good faith in marrying Ronald Lawson is the statement of Ronald's first wife, Donna. Tr. 94–95. However, Donna was unable to testify affirmatively that, at the time of appellant's March 8, 1971 marriage to Ronald, appellant knew that Ronald's previous marriage to Donna was undissolved.

It is undisputed that appellant was living with Ronald at the time of his death, that she took him to the hospital immediately prior to his passing, and that she signed his death certificate and arranged for his funeral.

MILBURN, Circuit Judge, concurring.

I write separately to emphasize that this case does not turn on considerations of life-style. Rather, the only issue facing this court is whether there is substantial evidence in the record to support the Secretary's determination that plaintiff did not in good faith go through a marriage ceremony with the insured such that the marriage cannot be deemed valid under 42 U.S.C. § 416(h)(1)(B). More specifically, this determination turns on whether plaintiff was aware of the insured's prior undissolved marriage at the time she went through her marriage ceremony with the insured. Because the evidence is overwhelming that plaintiff did not in fact have knowledge of the previous marriage at the relevant time, the denial of benefits is not supported by substantial evidence, and this case must be REMANDED for an award of benefits.